**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| BOARD OF PARK COMMISSIONERS OF THE CLEVELAND METROPOLITAN PARK DISTRICT | ) ) ) ) | |
| | ) | CASE NO. 1:21-cv-1284 |
| Plaintiff, | ) ) ) | |
| | ) | JUDGE JAMES S. GWIN |
| vs. | ) ) | |
| ZOOLOGICAL SOCIETY OF PITTSBURGH a/k/a PITTSBURGH ZOO & PPG AQUARIUM | ) ) ) ) | **AMENDED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY** |
| Defendants. | ) ) | **INJUNCTION** |

Pursuant to Fed. R. Civ. P. 65, Plaintiff Board of Park Commissioners of the Cleveland Metropolitan Park District ("Cleveland Metroparks") moves this Court for a temporary restraining order and preliminary injunction prohibiting defendant Zoological Society of Pittsburgh a/k/a Pittsburgh Zoo & PPG Aquarium ("Pittsburgh Zoo") from using the ASIAN LANTERN FESTIVAL™ mark or any confusingly similar mark or colorable imitation thereof in connection with the promotion, advertisement, display, sale, or distribution of any goods or services offered by Pittsburgh Zoo.

Pursuant to Rule 65(b), Cleveland Metroparks also moves this Court for a preliminary injunction containing the same terms as requested above for the temporary restraining order.

A memorandum in support of this motion and proposed temporary restraining order and preliminary injunction are attached.

This amended motion and memorandum are being filed to include a table of contents, table of authorities, summary of argument, and issues to be decided as required by Local Rule 7.1(f).

Respectfully submitted,

Dated: July 2, 2021 /s/ Carrie A. Shufflebarger
Carrie A. Shufflebarger (0081141)
Carrie.Shufflebarger@ThompsonHine.com
**THOMPSON HINE LLP**
312 Walnut Street, 14th Floor
Cincinnati, Ohio 45202-4089
Phone: 513-352-6678
Fax: 513-241-4771

Mark R. Butscha, Jr. (0088854)
Mark.Butscha@ThompsonHine.com
**THOMPSON HINE LLP**
3900 Key Center
127 Public Square
Cleveland, Ohio 44114-1291
Phone: 216-566-5500
Fax: 216-566-5800

*Attorneys for Plaintiff Board of Park
Commissioners of the Cleveland Metropolitan Park
District*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

|  |  |  |
|---|---|---|
| BOARD OF PARK COMMISSIONERS OF THE CLEVELAND METROPOLITAN PARK DISTRICT | ) ) ) ) | CASE NO. 1:21-cv-1284 |
| Plaintiff, | ) ) ) | JUDGE JAMES S. GWIN |
| vs. | ) ) |  |
| ZOOLOGICAL SOCIETY OF PITTSBURGH a/k/a PITTSBURGH ZOO & PPG AQUARIUM | ) ) ) ) |  |
| Defendants. | ) ) |  |

---

## PLAINTIFF'S AMENDED MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

---

# TABLE OF CONTENTS

Page

I.      INTRODUCTION, SUMMARY OF ARGUMENT, AND ISSUES TO BE DECIDED.. 1

II.     RELEVANT FACTS ................................................................................................ 1

III.    LAW AND ARGUMENT ...................................................................................... 4

     A.      Cleveland Metroparks is entitled to preliminary injunctive relief. ......................... 4

          1.      Cleveland Metroparks is likely to succeed on the merits. .............................. 5

               a.      Cleveland Metroparks has a legally protectable ownership interest in the ASIAN LANTERN FESTIVAL™ mark, and Pittsburgh Zoo is using it without consent.................................................................................... 6

               b.      Pittsburgh Zoo's unauthorized use of the ASIAN LANTERN FESTIVAL™ mark is likely to cause consumer confusion. .................... 8

          2.      Cleveland Metroparks will be irreparably harmed if the relief sought is not granted. ........................................................................................... 13

          3.      Third parties will not be harmed by an injunction, and any harm to Pittsburgh Zoo is outweighed by the harm Cleveland Metroparks will suffer in the absence of an injunction. ............................................................ 14

          4.      The issuance of an injunction will serve the public interest......................... 15

     B.      No bond is necessary. ........................................................................................ 16

IV.     CONCLUSION.................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*,
    280 F.3d 619 (6th Cir. 2002) ................................................................7

*Ameritech, Inc. v. Am. Info. Techs. Corp.*,
    811 F.2d 960 (6th Cir. 1987) ................................................................9

*Audi AG v. D'Amato*,
    469 F.3d 534 (6th Cir. 2006) .................................................... *passim*

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*,
    511 F.3d 535 (6th Cir. 2007) ...........................................................5, 6

*Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*,
    109 F.3d 275 (6th Cir. 1997) .................................................... *passim*

*Ferrari S.P.A. Esercizio Fabriche Auto. Corse v. Roberts*,
    944 F.2d 1235 (6th Cir. 1991) .......................................................8, 11

*Frisch's Rest., Inc. v. Shoney's Inc.*,
    759 F.2d 1261 (6th Cir. 1985) ............................................................5

*Golden v. Kelsey-Hayes Co. (In re Golden)*,
    73 F.3d 648 (6th Cir. 1996) ................................................................5

*Grubbs v. Sheakley Grp., Inc.*,
    807 F.3d 785 (6th Cir. 2015) ...........................................9, 10, 11, 13

*Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*,
    931 F.2d 1100 (6th Cir. 1991) ............................................................6

*Induct-O-Matic Corp. v. Inductotherm Corp.*,
    747 F.2d 358 (6th Cir. 1984) ..............................................................7

*Innovation Ventures, LLC v. N2G Distrib., Inc.*,
    763 F.3d 524 (6th Cir. 2014) .........................................................8, 13

*Johnson v. Jones*,
    149 F.3d 494 (6th Cir. 1998) ..............................................................6

*Magpul Indus. Corp. v. Mayo*,
    No. 1:13 CV 01782, 2013 U.S. Dist. LEXIS 120320 (N.D. Ohio Aug. 23,
    2013) ..............................................................................................15, 17

*Maker's Mark Distillery, Inc. v. Diageo N.A., Inc.*,
  679 F.3d 410 (6th Cir. 2012) .................................................................8, 9, 11, 13

*Max Rack, Inc. v. Core Health & Fitness, LLC*,
  2019 U.S. Dist. LEXIS 158008 (S.D. Ohio Sep. 17, 2019).......................................6

*Moltan Co. v. Eagle-Picher Indus. Inc.*,
  55 F.3d 1171 (6th Cir. 1995) .................................................................................16

*Ohio State Univ. v. Thomas*,
  738 F. Supp. 2d 743 (S.D. Ohio 2010) ..................................................................16

*Perfetti Van Melle USA v. Cadbury Adams USA LLC*,
  732 F. Supp. 2d 712 (E.D. Ky. 2010) ....................................................................15

*Stampede Presentation Prods., Inc. v. Westminster Technologies, Inc.*,
  No. 1:13 CV 1713, 2013 U.S. Dist. LEXIS 143358 (N.D. Ohio Oct. 3, 2013).........5

*Tumblebus Inc. v. Cranmer*,
  399 F.3d 754 (6th Cir. 2005) .............................................................................6, 7

*Univ. Books & Videos, Inc. v. Metro. Dade Cnty.*,
  33 F. Supp. 2d 1364 (S.D. Fla. 1999) ...................................................................16

## Statutes and Rules

15 U.S.C. § 1116(a) ...............................................................................................14

15 U.S.C. § 1125(a) ................................................................................................6

Fed. R. Civ. P. 65(c) ..............................................................................................16

## I.      INTRODUCTION, SUMMARY OF ARGUMENT, AND ISSUE TO BE DECIDED

Every year since 2018, Plaintiff Board of Park Commissioners of the Cleveland Metropolitan Park District ("Cleveland Metroparks") has hosted an annual light show event at the Cleveland Metroparks Zoo called the ASIAN LANTERN FESTIVAL™.  Cleveland Metroparks has continuously advertised and marketed the event using the ASIAN LANTERN FESTIVAL™ mark, and each year attendees of the ASIAN LANTERN FESTIVAL™ include people from Western Pennsylvania and the Youngstown, Ohio area.

In 2021, Pittsburgh Zoological Society of Pittsburgh a/k/a Pittsburgh Zoo & PPG Aquarium ("Pittsburgh Zoo") announced that it would host its own inaugural light show event; however, it has advertised and marketed the event using the exact same "Asian Lantern Festival" name as Cleveland Metroparks.

The issue to be decided on this motion is whether Cleveland Metroparks is entitled to temporary and preliminary injunctive relief enjoining Pittsburgh Zoo's further unauthorized use of Cleveland Metroparks's ASIAN LANTERN FESTIVAL™ mark.  Pittsburgh Zoo's unauthorized use of the "Asian Lantern Festival" mark will irreparably harm Cleveland Metroparks's reputation and goodwill and is likely to confuse and deceive consumers and cause them to mistakenly believe that Pittsburgh Zoo's event is authorized, sponsored, approved, endorsed, or licensed by Cleveland Metroparks.  Thus, Cleveland Metroparks is entitled to an immediate temporary restraining order and preliminary injunction to enjoin Pittsburgh Zoo from using the ASIAN LANTERN FESTIVAL™ mark.

## II.     RELEVANT FACTS

Cleveland Metroparks, one of Ohio's largest park districts, was established in 1917.  (Verified Complaint ¶8.)  Since 1968, Cleveland Metroparks has owned and operated the Cleveland Metroparks Zoo, a 183-acre zoological park in Cleveland, Ohio that has been in

existence since 1882.  (*Id.* ¶¶ 9-10.)  Cleveland Metroparks Zoo strives to connect people with wildlife and inspire personal responsibility for conserving the natural world, including by offering experiences to introduce guests to animals and cultures from around the world. (*Id.* ¶¶ 11-12.)

In furtherance of that mission, in April 2018 Cleveland Metroparks entered into an agreement with Tianyu Arts & Culture, Inc. ("Tianyu") to present a light show using light displays of various sizes at Cleveland Metroparks Zoo.  (*Id.* ¶13.)  Tianyu had presented its light shows at other locations throughout the United States under the name "China Lights."  (*Id.* ¶15.) Cleveland Metroparks originated the name ASIAN LANTERN FESTIVAL™ in spring 2018 to advertise and market its light show.  (*Id.* ¶16.)  Before that time, no other entity in the United States was using the "Asian Lantern Festival" name.  (*Id.* ¶18.)

On June 12, 2018, Cleveland Metroparks announced the ASIAN LANTERN FESTIVAL™, an event to be held at the Cleveland Metroparks Zoo that would feature more than 40 displays and hundreds of light displays.  (*Id.* ¶20.)  Since 2018, Cleveland Metroparks has continuously used the mark ASIAN LANTERN FESTIVAL™ to identify its annual light show, which has been held at Cleveland Metroparks Zoo in 2018, 2019, and 2020.  (*Id.* ¶¶ 21, 29.)  The 2021 ASIAN LANTERN FESTIVAL™ is scheduled to take place at Cleveland Metroparks Zoo from July 14 through September 5.  (*Id.* ¶34.)

Cleveland Metroparks has expended substantial resources marketing and advertising the ASIAN LANTERN FESTIVAL™.  (*Id.* ¶22.)  In the past two years, Cleveland Metroparks has spent more than $300,000 to advertise the ASIAN LANTERN FESTIVAL™.  (*Id.* ¶23.)  In 2021, advertisements have appeared on a dozen digital channels, four print media outlets, eight radio stations, five television stations, and billboards.  (*Id.* ¶24.)  The ASIAN LANTERN FESTIVAL™ also has been promoted widely on social media, including Facebook, Instagram,

2

and Twitter.  (*Id.* ¶25.)  In addition, the ASIAN LANTERN FESTIVAL™ has received substantial media attention since its inception in 2018, reaching more than 400 million people through nearly 500 digital, broadcast television, and radio stories. (*Id.* ¶27.)  Last year alone, more than 20 digital content providers picked up stories about the ASIAN LANTERN FESTIVAL™, along with three radio stations and four television stations. (*Id.* ¶28.)

The ASIAN LANTERN FESTIVAL™ is quite popular (more than 165,000 people attended last year), and consumers in Ohio and Western Pennsylvania associate ASIAN LANTERN FESTIVAL™ with Cleveland Metroparks Zoo.  (*Id.* ¶29.)  Each year, people from Western Pennsylvania and the Youngstown, Ohio area (about halfway between Cleveland and Pittsburgh) attend the ASIAN LANTERN FESTIVAL™ at Cleveland Metroparks Zoo.  (*Id.* ¶31.)  In 2020, survey data indicates that approximately 8% of the attendees of ASIAN LANTERN FESTIVAL™ lived in Western Pennsylvania and the Youngstown, Ohio area.  (*Id.* ¶33.)

After Cleveland Metroparks successfully launched and executed the ASIAN LANTERN FESTIVAL™, Pittsburgh Zoo became interested in hosting a similar event.  In or about 2020, staff from the Pittsburgh Zoo came to Cleveland Metroparks Zoo to visit the ASIAN LANTERN FESTIVAL™ as part of its process to determine whether Pittsburgh Zoo should host a light show of its own.  (*Id.* ¶35.)  After that visit, Pittsburgh Zoo decided to do so and entered into a contract with Tianyu to present the inaugural light show at Pittsburgh Zoo in or about August 2021.  (*Id.* ¶36.)

Pittsburgh Zoo's scheduled event is not affiliated with Cleveland Metroparks Zoo's ASIAN LANTERN FESTIVAL™ in any way, but internet advertising for the Pittsburgh Zoo's event utilizes the name "Asian Lantern Festival," and photographs of light displays from Cleveland Metroparks Zoo's ASIAN LANTERN FESTIVAL™ are being used to create

advertisements for the Pittsburgh Zoo's event.  (*Id.* ¶¶37-43.)

Cleveland Metroparks did not become aware that Pittsburgh Zoo was using the name "Asian Lantern Festival" for its light show until June 22, 2021.  (*Id.* ¶39.)  On June 25, Cleveland Metroparks notified Pittsburgh Zoo by email that Cleveland Metroparks has cultivated trademark rights to ASIAN LANTERN FESTIVAL™ and asked Pittsburgh Zoo rebrand its event.  (*Id.* ¶44, Ex. A.)  Pittsburgh Zoo did not respond to the June 25 email, so on June 29 Cleveland Metroparks sent a letter to Pittsburgh Zoo asking it to cease and desist from using Cleveland Metroparks's trademark ASIAN LANTERN FESTIVAL™.  (*Id.* ¶45, Ex. B.)  The letter requested Pittsburgh Zoo to confirm by July 1 that it would rebrand its light show.  (*Id.*)

The chief executive officer of Pittsburgh Zoo spoke to the executive director of Cleveland Metroparks and said Pittsburgh Zoo is aware of the June 29 cease-and-desist letter.  (*Id.* ¶46.)  However, Pittsburgh Zoo has not agreed to cease its unauthorized use of the ASIAN LANTERN FESTIVAL™ mark.  (*Id.* ¶¶47-48.)  Indeed, on July 1, 2021, counsel for Pittsburgh Zoo sent a letter to Cleveland Metroparks asserting that Cleveland Metroparks cannot claim trademark rights in the ASIAN LANTERN FESTIVAL™ mark.  (*Id.* ¶47.)

## III.   LAW AND ARGUMENT

### A.    Cleveland Metroparks is entitled to preliminary injunctive relief.

"Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement."  *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006) (internal quotation marks omitted).  A district court has broad discretion to grant injunctive relief.  *See Frisch's Rest., Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985). A party is entitled to injunctive relief when, on balance, a court finds the following factors weigh in favor of relief:

(1)    The likelihood or probability of the movant's success on the merits;

(2)      Whether the movant will suffer irreparable harm if the requested relief is

denied;

(3)      What injury to others will be caused by the granting of the injunction; and

(4)      Whether the public interest will be served by the granting of an injunction.

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir.

2007); *Frisch's Rest.*, 759 F.2d at 1263.  This four-factor test is flexible; the factors must be

balanced and should not considered prerequisites to the issuance of an injunction. *Certified*

*Restoration Dry Cleaning Network,* 511 F.3d at 542; *Golden v. Kelsey-Hayes Co. (In re Golden)*,

73 F.3d 648, 653 (6th Cir. 1996); *Frisch's Rest.*, 759 F.2d at 1263; *Stampede Presentation*

*Prods., Inc. v. Westminster Technologies, Inc.,* No. 1:13 CV 1713, 2013 U.S. Dist. LEXIS

143358, at *8 (N.D. Ohio Oct. 3, 2013).

Based on a balancing of the factors here and the threat of immediate irreparable harm to

Cleveland Metroparks, a temporary restraining order is warranted.

### 1.      Cleveland Metroparks is likely to succeed on the merits.

To demonstrate a substantial likelihood of success on the merits, the movant need only

show a probability that a reasonable jury would find in its favor after a trial on the merits. *See*

*Certified Restoration Dry Cleaning Network,* 511 F.3d at 542 ("[A] party is not required to prove

his case in full [and] a preliminary injunction is customarily granted on the basis of procedures

that are less formal and evidence that is less complete than in a trial on the merits.").

To succeed on its trademark infringement claim under 15 U.S.C. § 1125(a), Cleveland

Metroparks must demonstrate that its ASIAN LANTERN FESTIVAL™ "mark is protectable,

and if so, whether there is a likelihood of confusion" caused by Pittsburgh Zoo's use of the

ASIAN LANTERN FESTIVAL™ mark.  *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 761 (6th

Cir. 2005).[1]

Because Cleveland Metroparks's ASIAN LANTERN FESTIVAL™ mark is protectable, and Pittsburgh Zoo's use of the mark is likely to cause confusion, Cleveland Metroparks is likely to succeed on the merits of its claims.

> ### a. Cleveland Metroparks has a legally protectable ownership interest in the ASIAN LANTERN FESTIVAL™ mark, and Pittsburgh Zoo is using it without consent.

The protectability[2] of a mark depends on its distinctiveness. *See Tumblebus*, 399 F.3d at 761. Suggestive, arbitrary, and fanciful marks are inherently distinctive and protectable if used by the owner. *See id.* Descriptive marks are not inherently distinctive but may be protectable if they develop a secondary meaning. *See id.* Generic marks, by contrast, receive no protection. *See id.*

A mark is suggestive if it "suggests rather than describes an ingredient or characteristic of the goods and requires the observer or listener to use imagination and perception to determine the nature of the goods." *Induct-O-Matic Corp. v. Inductotherm Corp.*, 747 F.2d 358, 362 (6th Cir. 1984). Here, the ASIAN LANTERN FESTIVAL™ mark is suggestive because it describes some characteristic of the event and requires the consumer to use imagination and perception to

---

[1] Cleveland Metroparks can also recover under this same showing for unfair competition because "likelihood of confusion is [also] the essence of an unfair competition claim." *Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir. 1998) (internal quotation marks omitted). Cleveland Metroparks's claim under the Ohio Deceptive Trade Practices Act is analyzed under the same standard as well. *See Max Rack, Inc. v. Core Health & Fitness, LLC*, 2019 U.S. Dist. LEXIS 158008, at *21 (S.D. Ohio Sep. 17, 2019).

[2] To the extent the ASIAN LANTERN FESTIVAL™ mark is protectable, its ownership by Cleveland Metroparks should not be in dispute. "Trademark ownership arises from actual use in the market, and priority of ownership stems from priority of continuous use." *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1105 (6th Cir. 1991). Cleveland Metroparks started using the ASIAN LANTERN FESTIVAL™ mark in 2018 and has used it continuously since that time. Pittsburgh Zoo first started using the mark in 2021, three years after Cleveland Metroparks originated the use of the mark. Thus, Cleveland Metroparks has established priority ownership of the ASIAN LANTERN FESTIVAL™ mark.

determine the nature of the entire event, which includes not only large-scale illuminations but also live performances, including foot juggling, contortion and martial arts, as well as an Asian craft market and cuisine.

Further, the mark has acquired a secondary meaning. Courts in the Sixth Circuit apply a seven-factor test to determine whether a mark has acquired a secondary meaning: "(a) direct consumer testimony; (b) consumer surveys; (c) exclusivity, length, and manner of use; (d) amount and manner of advertising; (e) amount of sales and number of customers; (f) established place in the market; and (g) proof of intentional copying." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 640 n.14 (6th Cir. 2002). Those factors weigh in favor of Cleveland Metroparks.

Cleveland Metroparks started using the ASIAN LANTERN FESTIVAL™ mark in 2018 and has used it continuously since that time, holding its event annually in 2018, 2019, 2020, and 2021. The event is also popular. In 2020, more than 165,000 people attended the ASIAN LANTERN FESTIVAL™ at Cleveland Metroparks, generating more than $2.6 million in revenue. Since the event's inception, more than 487 stories were written or aired about Cleveland Metroparks Zoo's ASIAN LANTERN FESTIVAL™, and it appeared on social media almost 3 million times. That broad, sustained exposure stands in stark contrast to the Pittsburgh Zoo's use of the mark, which did not occur until 2021, three years after Cleveland Metroparks originated the use of the mark and a year after Pittsburgh Zoo employees traveled to Cleveland to observe the ASIAN LANTERN FESTIVAL™ before later adopting the identical name for its event.

In sum, the ASIAN LANTERN FESTIVAL™ mark is protectable because it is suggestive, and, even if it is considered descriptive, it has acquired a secondary meaning. Thus, Cleveland Metroparks has a protectable interest in the mark.

**b.** ***Pittsburgh Zoo's unauthorized use of the ASIAN LANTERN FESTIVAL™ mark is likely to cause consumer confusion.***

The Sixth Circuit considers eight factors when determining whether consumer confusion is likely:

> (1) the strength of the plaintiff's mark, (2) the relatedness of the goods or services offered by the plaintiff and the defendant, (3) the similarity of the marks, (4) any evidence of actual confusion, (5) the marketing channels used by the parties, (6) the probable degree of purchaser care and sophistication, (7) the defendant's intent in selecting its mark, and (8) the likelihood of either party expanding its product line using the marks.

*Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 534 (6th Cir. 2014).  The "most important" factors are strength of the plaintiff's mark and the similarity of the marks.  *Maker's Mark Distillery, Inc. v. Diageo N.A., Inc.*, 679 F.3d 410, 424 (6th Cir. 2012).  Nevertheless, "[n]ot all of these factors will be relevant in every case."  *Innovation*, 763 F.3d at 424 (internal quotation marks omitted).  Thus, "[a] party claiming infringement need not show all, or even most, of these factors in order to prevail."  *Ferrari S.P.A. Esercizio Fabriche Auto. Corse v. Roberts*, 944 F.2d 1235, 1242 (6th Cir. 1991).

Here, the relevant factors show that consumer confusion is likely.

> **i.** *Cleveland Metroparks's ASIAN LANTERN FESTIVAL™ mark is strong.*

The first relevant factor, strength of the mark, weighs in Cleveland Metroparks's favor. This factor focuses on whether the asserted mark is strong (i.e. distinctive) or weak.  "[T]he stronger a trademark, the greater the protection afforded" and the more likely consumer confusion will occur.  *Ameritech, Inc. v. Am. Info. Techs. Corp.*, 811 F.2d 960, 966 (6th Cir. 1987); *accord Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 795 (6th Cir. 2015).

To determine strength, courts employ a two-part inquiry that looks to both the mark's conceptual strength as well as the mark's commercial strength.  *Maker's Mark*, 679 F.3d at 419.

8

To evaluate conceptual strength, the court places the mark on a spectrum.  *Grubbs*, 807 F.3d at 795.  This spectrum includes four categories of marks, from weakest to strongest:  (1) generic, (2) descriptive, (3) suggestive, and (4) fanciful or arbitrary.  *Daddy's Junky*, 109 F.3d at 280; *see also Grubbs*, 807 F.3d at 795.  To evaluate commercial strength, courts consider evidence of long use, extensive advertising, and consumer recognition.  *See Maker's Mark,* 679 F.3d at 420.

Here, as discussed above regarding protectability, the ASIAN LANTERN FESTIVAL™ mark is suggestive and therefore on the stronger end of the conceptual strength spectrum. Moreover, the mark is commercially strong.  Cleveland Metroparks first started using the ASIAN LANTERN FESTIVAL™ mark in 2018.  Since that time, Cleveland Metroparks has used the mark continuously to promote its annual event, expending hundreds of thousands of dollars on advertising.  Attendance at the event has been robust; more than 165,000 people attended in 2020.  In addition, the mark has been recognized in hundreds of media stories and garnered substantial exposure on social media.  Thus, the mark is commercially strong.

> ii.  *Pittsburgh Zoo is using Cleveland Metroparks's identical ASIAN LANTERN FESTIVAL™ mark to promote a similar light show event in an overlapping geographic region.*

The second (relatedness of goods) and third (similarity) factors also weigh in favor of Cleveland Metroparks.

In evaluating the "relatedness of goods" factor, courts find that "confusion is likely" where "the parties compete directly" and their "marks are sufficiently similar."  *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 282-83 (6th Cir. 1997). With respect to similarity, "courts should examine the pronunciation, appearance, and verbal translation of conflicting marks."  *Audi*, 469 F.3d at 543 (internal quotation marks omitted).

Here, the marks are not merely similar—they are identical.  Pittsburgh Zoo has advertised and marketed its light show event using the name "Asian Lantern Festival," which is identical to

the ASIAN LANTERN FESTIVAL™ name that Cleveland Metroparks has used to advertise and market its annual event since 2018.  Moreover, Pittsburgh Zoo is using an identical mark in connection with a virtually identical event (light show) at a virtually identical location (zoo) presented by the same company (Tianyu), and Cleveland Metroparks Zoo and Pittsburgh Zoo are competing for the same customers in the same geographic region (Western Pennsylvania and Northeast Ohio).

Thus, both these factors weigh in favor of Cleveland Metroparks.

> iii.  *Pittsburgh Zoo and Cleveland Metroparks Zoo target similar customers using similar marketing channels.*

For the "marketing channels" factor, courts "evaluate the similarity in the customers for the goods and services as well as in the marketing efforts employed by each party."  *Grubbs*, 807 F.3d at 796 (internal quotation marks omitted).  The Sixth Circuit has recognized that use of the internet as a marketing tool is particularly significant in evaluating this factor:

> [S]imultaneous use of the Internet as a marketing tool exacerbates the likelihood of confusion, given the fact that entering a web site takes little effort—usually one click from a linked site or a search engine's list; thus, Web surfers are more likely to be confused as to the ownership of a web site than traditional patrons of a brick-and-mortar store would be of a store's ownership.

*Audi*, 469 F.3d at 544 (internal quotation marks omitted).

Here, Cleveland Metroparks Zoo and Pittsburgh Zoo are vying for the same customers, particularly given their geographic proximity and the large number of potential consumers that are located equally close to both.  Moreover, both use the internet for marketing their respective zoos and light festivals.  Thus, because the parties' marketing channels are very similar and their customers and potential customers overlap, confusion is more likely.  This factor also favors Cleveland Metroparks.

> iv.  *Pittsburgh Zoo intended to benefit from the goodwill developed by Cleveland Metroparks for the ASIAN LANTERN FESTIVAL™ mark.*

"[The] intent of [a party] in adopting [another's mark] is a critical factor, since if the mark was adopted with the intent of deriving benefit from the reputation of [the plaintiff,] that fact alone may be sufficient to justify the inference that there is confusing similarity." *Ferrari*, 944 F.2d at 1242 (internal quotation marks omitted); *accord Grubbs*, 807 F.3d at 797.  While intent can be critical, "[i]ntent is an issue whose resolution may benefit only the cause of the senior user, not of an alleged infringer." *Maker's Mark*, 679 F.3d at 424.

Courts can find that a defendant intended to benefit from the plaintiff's reputation or goodwill where the defendant purposefully copied the plaintiff's mark.  *See Grubbs*, 807 F.3d at 797; *Daddy's Junky Music*, 109 F.3d at 286.  Furthermore, a court can find purposeful copying from the defendant's adoption and use of its contested mark with knowledge of the plaintiff's mark.  *Daddy's Junky Music*, 109 F.3d at 286.  Finally, "the extensive advertising and long-term use of [the plaintiff's] mark can create a presumption that the alleged infringer knew of [the plaintiff's] mark." *Id.*

Here, the evidence strongly supports a finding of wrongful intent.  Pittsburgh Zoo had actual notice that Cleveland Metroparks has been marketing its annual light show event as the ASIAN LANTERN FESTIVAL™ because Pittsburgh Zoo employees visited Cleveland Metroparks Zoo to learn about the event in 2020 when Pittsburgh Zoo was considering whether to start its own similar event.  Despite that actual knowledge, Pittsburgh Zoo is using the exact same name for its very similar event.  Pittsburgh purposefully copied the ASIAN LANTERN FESTIVAL™ mark and intended to benefit from the reputation and goodwill that Cleveland Metroparks has built through its continuous use of the mark since 2018.  Thus, this factor weighs in favor of Cleveland Metroparks as well.

> v.  Typical purchasers and attendees of the ASIAN LANTERN
> FESTIVAL™ are members of the general public, not
> sophisticated purchasers of specialized goods or services.

The "probable degree of purchaser care and sophistication" factor focuses on whether a typical buyer is likely to be confused as to the source of the defendant's products. *See Daddy's Junky Music*, 109 F.3d at 284.  A higher standard applies—and confusion is less likely—when "potential buyers possess special expertise or are sophisticated purchasers of the goods at issue." *Id.*  Here, customers of the Cleveland Metroparks Zoo and Pittsburgh Zoo are members of the general public, not sophisticated purchasers with specialized knowledge or expertise.  Thus, this factor weighs in favor of Cleveland Metroparks, too.

> vi.  The actual consumer confusion and expansion of product
> lines factors are irrelevant.

"Due to the difficulty of securing evidence of actual confusion, a lack of such evidence is rarely significant, and the factor of actual confusion is weighted heavily only when there is evidence of past confusion, or perhaps, when the particular circumstances indicate such evidence should have been available."  *Daddy's Junky Music*, 109 F.3d at 284 (internal quotation marks omitted); *accord Maker's Mark*, 679 F.3d at 423.  Thus, a plaintiff does not need to present evidence of actual confusion to prevail in showing likelihood of confusion.  *Innovation Ventures*, 763 F.3d at 536 ("Plaintiff did not need to show actual confusion to prevail at trial.").  Here, having not taken any discovery in this case, Cleveland Metroparks does not yet have any evidence of actual confusion.  But this fact carries little weight and is, thus, non-determinative. *See Maker's Mark*, 679 F.3d at 422–23.

The expansion of product lines factor is also irrelevant.  A lack of evidence of expansion plans carries little weight in favor of or against the plaintiff.  *Maker's Mark*, 679 F.3d at 424; *accord Daddy's Junky Music*, 109 F.3d at 287.  That is, where is there is no evidence on this

factor—as is the case here—"this factor is not relevant to our analysis." *Grubbs*, 807 F.3d at 797.  Moreover, this factor is not relevant where, as here, the parties' product lines already overlap. *Audi*, 469 F.3d at 545.

> vii. *Summary – Most of the relevant factors weigh in favor of Cleveland Metroparks.*

Most of the likelihood of confusion factors weigh in Cleveland Metroparks's favor, and none of them weigh against Cleveland Metroparks.  The two most important factors—strength of the asserted mark and similarity of the marks—weigh heavily in Cleveland Metroparks's favor.  Thus, there is a likelihood of confusion.  *See Maker's Mark*, 679 F.3d at 424 (finding a likelihood of consumer confusion where the two most important factors, plus two other factors, weighed in favor of the plaintiff).  In sum, Cleveland Metroparks has shown that it is likely to succeed on the merits of its trademark infringement and unfair competition claims because: it has a valid and protectable ownership interest in the ASIAN LANTERN FESTIVAL™ mark; Pittsburgh Zoo is using the ASIAN LANTERN FESTIVAL™ mark without consent; and Pittsburgh Zoo's use of the ASIAN LANTERN FESTIVAL™ mark is likely to cause consumer confusion.  Thus, Cleveland Metroparks is likely to succeed on the merits of its claims.

> 2. <u>Cleveland Metroparks will be irreparably harmed if the relief sought is not granted.</u>

Cleveland Metroparks will suffer the irreparable injuries of loss of control of its reputation and goodwill because of Pittsburgh Zoo's confusing, misleading, and unauthorized use of the ASIAN LANTERN FESTIVAL™ mark.  Under the Trademark Modernization Act of 2020 ("TMA"), "[a] plaintiff seeking such an injunction shall be entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order." 15 U.S.C. § 1116(a).  Because Cleveland Metroparks has

13

demonstrated that consumer confusion is likely, irreparable injury is presumed under the TMA.

Even if not presumed, Cleveland Metroparks can demonstrate irreparable harm based on the loss of goodwill and reputation it has developed over the last several years.  Pittsburgh Zoo's new light show event is not sponsored by or affiliated with Cleveland Metroparks in any way.  Yet Pittsburgh Zoo named its event using the identical ASIAN LANTERN FESTIVAL™ mark established by Cleveland Metroparks three years ago and used continuously by Cleveland Metroparks ever since.  The use of an identical mark is likely to cause consumer confusion, particularly given the geographic overlap between consumers and potential consumers of these similar events in Cleveland and Pittsburgh.

If the Court does not grant a temporary restraining order and preliminary injunction, Cleveland Metroparks will continue to suffer irreparable harm, and there is no adequate remedy at law to compensate Cleveland Metroparks's loss of reputation and customer goodwill.

> 3.  <u>Third parties will not be harmed by an injunction, and any harm to Pittsburgh Zoo is outweighed by the harm Cleveland Metroparks will suffer in the absence of an injunction.</u>

This factor requires the Court to (1) balance the harm Cleveland Metroparks would suffer if its request for a preliminary injunction were denied against the harm Pittsburgh Zoo would suffer were an injunction to issue, and (2) assess the impact the preliminary injunction might have on relevant third parties. *See Magpul Indus. Corp. v. Mayo*, No. 1:13 CV 01782, 2013 U.S. Dist. LEXIS 120320, at *12 (N.D. Ohio Aug. 23, 2013) ("[T]he harm to Magpul from the denial of the requested order outweighs any harm to defendants' legitimate interests.").

The harm to Cleveland Metroparks from the denial of injunctive relief outweighs any purported harm to Pittsburgh Zoo.  As detailed above, Cleveland Metroparks suffers ongoing irreparable harm through the loss of control of its reputation and goodwill caused by Pittsburgh Zoo's infringing conduct.  Any "harm" to Pittsburgh Zoo caused by an order prohibiting it from

14

further unauthorized use of the ASIAN LANTERN FESTIVAL™ mark is not legally cognizable. *See Magpul*, 2013 U.S. Dist. LEXIS 120320, at *12 ("[T]he defendants will suffer no legally cognizable harm by being enjoined from selling an infringing product."). Moreover, any such harm is self-inflicted and should not excuse Pittsburgh Zoo's infringement. *See Perfetti Van Melle USA v. Cadbury Adams USA LLC*, 732 F. Supp. 2d 712, 726 (E.D. Ky. 2010) ("[A]ny self-inflicted harm to Defendant that could result from issuance of preliminary injunctive relief should not excuse any improper action by the company so as to preclude an injunction." (internal quotation marks omitted)).

In addition, no third parties will be harmed if the injunction is granted. To the contrary, consumers will be spared the confusion associated with Pittsburgh Zoo's unauthorized use of the ASIAN LANTERN FESTIVAL™ mark.

This factor weighs heavily in favor of granting Cleveland Metroparks's requested injunction.

### 4.  The issuance of an injunction will serve the public interest.

In trademark infringement cases, injunctions serve at least two fundamental purposes: preventing consumer confusion and deception in the marketplace and protecting the trademark holder's property interest in the mark. *Lorillard*, 453 F.3d at 383 (directing the district court to enter a preliminary injunction); *see also Audi*, 469 F.3d at 550 (affirming the district court's decision to issue an injunction to "prevent consumers from being misled").

Here, an injunction will serve the public interest. Pittsburgh Zoo's unauthorized use of Cleveland Metroparks's ASIAN LANTERN FESTIVAL™ mark is likely to cause consumer confusion, and an injunction will prevent further confusion. Moreover, Pittsburgh Zoo's conduct harms Cleveland Metroparks's interest in its mark. Thus, an injunction would promote the public interest in protecting intellectual property.

Accordingly, all of the factors for injunctive relief weigh in favor of Cleveland Metroparks in this case.  By issuing a temporary restraining order, the Court will prevent the high likelihood of irreparable harm to Cleveland Metroparks without causing harm to any third parties.

**B.      No bond is necessary.**

The Sixth Circuit has long held that the district court has discretion over whether to require the posting of a security in connection with Rule 65(c).  *Moltan Co. v. Eagle-Picher Indus. Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995); *Ohio State Univ. v. Thomas*, 738 F. Supp. 2d 743, 757 (S.D. Ohio 2010) (citing *Moltan* in a trademark infringement case and imposing no bond).  Because Cleveland Metroparks has a high likelihood of success on the merits, the Court should exercise it discretion and dispense with the bond requirement.  *See, e.g., Univ. Books & Videos, Inc. v. Metro. Dade Cnty.*, 33 F. Supp. 2d 1364, 1374 (S.D. Fla. 1999) (noting that courts frequently dispense with the bond requirement "when the party seeking the injunction has a high probability of succeeding in the merits of its claim").  In the alternative, if the Court requires a bond, Cleveland Metroparks requests that the amount of the bond should be nominal.  *See*, *e.g.*, *Magpul*, 2013 U.S. Dist. LEXIS 120320, at *15 (imposing a minimal bond of $2,000 in a trademark infringement case).

**IV.    CONCLUSION**

For the reasons set forth herein, Cleveland Metroparks's Motion for Temporary Restraining Order and Preliminary Injunction against Pittsburgh Zoo should be granted.

Respectfully submitted,

Dated: July 2, 2021                         /s/ Carrie A. Shufflebarger
                                                         Carrie A. Shufflebarger (0081141)
                                                         Carrie.Shufflebarger@ThompsonHine.com
                                                         **THOMPSON HINE LLP**

16

312 Walnut Street, 14th Floor
Cincinnati, Ohio 45202-4089
Phone: 513-352-6678
Fax: 513-241-4771

Mark R. Butscha, Jr. (0088854)
Mark.Butscha@ThompsonHine.com
**THOMPSON HINE LLP**
3900 Key Center
127 Public Square
Cleveland, Ohio 44114-1291
Phone: 216-566-5500
Fax: 216-566-5800

*Attorneys for Plaintiff Board of Park
Commissioners of the Cleveland Metropolitan Park
District*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 2, 2021, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system.


/s/ Carrie A. Shufflebarger
Carrie A. Shufflebarger