# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BOARD OF PARK COMMISSIONERS OF THE CLEVELAND METROPOLITAN PARK DISTRICT, | : : : | Case No. 1:21-cv-1284 |
| Plaintiff, | : | |
| | : | Judge James S. Gwin |
| v. | : : | |
| ZOOLOGICAL SOCIETY OF PITTSBURGH a/k/a PITTSBURGH ZOO & PPG AQUARIUM, | : : : | JURY TRIAL DEMANDED |
| Defendant. | : | |

---

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

---

## TABLE OF CONTENTS

I.    Statement of Issues ................................................................................................. 1

II.   Summary of Argument ............................................................................................ 1

III.  Introduction and Background .................................................................................. 2

   A.    History of the Asian Lantern Festival ................................................................. 2

   B.    Tianyu Arts & Culture, Inc. .............................................................................. 3

   C.    Use of the phrase "Asian Lantern Festival" ...................................................... 4

IV.   Counterstatement of Facts ...................................................................................... 7

V.    Legal Standard ....................................................................................................... 7

   A.    Personal Jurisdiction ......................................................................................... 7

   B.    Venue ............................................................................................................... 8

   C.    Temporary Restraining Order and Preliminary Injunction ................................ 8

VI.   Argument ............................................................................................................... 9

   A.    The Court Should Hold a Hearing Before Granting a
       Temporary Restraining Order ........................................................................... 9

   B.    This Court Lacks Personal Jurisdiction over Defendant Pittsburgh Zoo ................ 11

   C.    Venue Is Improper in This Judicial District ....................................................... 11

   D.    The Court Should Deny Plaintiff's Motion for a Temporary Restraining Order .... 12

      1.   Plaintiff Cannot Show a Likelihood of Success on the Merits of its Claims .......... 13

         a)   The term "Asian Lantern Festival" is not protectible, as it is a generic phrase
        or, at most, a descriptive phrase without secondary meaning. ................................ 15

            (1)   direct consumer testimony and consumer surveys ...................................... 18

            (2)   exclusivity, length, and manner of use ............... Error! Bookmark not defined.

            (3)   amount and manner of advertising, amount of sales, and number of
            customers ...................................................................................................... 18

            (4)   established place in the market ....................................................... 19

            (5)   proof of intentional copying ........................................................... 19

         b)   No likelihood of confusion exists ............................................................. 19

            (1)   strength of mark ......................................................................... 20

              (a)   conceptual strength ........................................................ 20

              (b)   commercial strength ....................................................... 21

             (2)   relatedness of services ................................................................. 22

            (3)   similarity of marks ..................................................................... 22

            (4)   evidence of actual confusion ......................................................... 23

            (5)   marketing channels ..................................................................... 23

            (6)   degree of customer care/sophistication ........................................... 23

            (7)   intent .......................................................................................... 24

            (8)   expansion of product lines ........................................................... 24

      2.   Plaintiff has Failed to Demonstrate Irreparable Harm .................................. 24

      3.   Issuance of the Injunction Would Cause Substantial Harm to Others ................. 25

      4.   Public Interest .............................................................................................. 26

   E.    In the Alternative the Court Should Impose a Substantial Bond .............................. 26

VII.  Conclusion ............................................................................................................ 27

i

# TABLE OF AUTHORITIES

**Cases**

*Aloe Creme Labs. v. Milsan, Inc.*, 423 F.2d 845, 849 (5th Cir. 1970)............................ 15

*Bath & Body Works, Inc. v. Luzier Personalized Cosmetics, Inc.*, 76 F.3d 743
    (6th Cir. 1996)................................................................................................... 4, 12

*Blinded Veterans Assoc. v. Blinded Am. Veterans Found.*, 872 F.2d 1035, 1041
    (D.C. Cir. 1989) ..................................................................................................... 15

*Bonnell v. Lorenzo*, 241 F.3d 800, 826 (6th Cir. 2001) ............................................... 7

*Boston Beer Co. Ltd. P'ship v. Slesar Bros. Brewing Co., Inc.*, 9 F.3d 175, 182
    (1st Cir. 1993) ....................................................................................................... 15

*Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1041 (2d Cir. 1992)............. 15

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)......................................... 9

*Burke–Parsons–Bowlby Corp. v. Appalachian Log Homes, Inc.*, 871 F.2d 590, 596
    (6th Cir. 1989)....................................................................................................... 15

*Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000)................................. 6

*Chabad of Southern Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432
    (6th Cir. 2004)......................................................................................................... 7

*City of Alexandria v. Helms*, 728 F.2d 643, 645-46 (4th Cir. 1984)............................ 6

*Cooper Indus., Inc. v. U.S. E.P.A.*, 775 F. Supp. 1027, 1036 (W.D. Mich. 1991). ...... 6

*ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 921 (6th Cir. 2003).............................. 11

*Federal–Mogul–Bower Bearings, Inc. v. Azoff*, 313 F.2d 405, 408 (6th Cir.1963) ..... 11

*Ferrari S.P.A. Esercizio v. Roberts*, 944 F.2d 1235, 1239 (6th Cir. 1991) ................. 15

*First Tech. Safety Sys, Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993) ................... 8

*Frisch's Restaurant, Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1264 (6th Cir. 1985)......... 12

*Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 647
    (6th Cir. 1982)................................................................................................... 12, 18

*Gen. Conference Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 415
    (6th Cir. 2010)........................................................................................................ 14

*Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000) ......... 8, 11

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423 (1974) ........... 8

*Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 311
    (6th Cir. 2001)....................................................................................................... 15

*Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100 (6th Cir. 1991)............ 19

*Honeywell, Inc. v. Brewer-Garrett Co.*, 135 F.3d 1331, No. 97-3673, 1998 WL 152951
    (6th Cir. March 23, 1998) ...................................................................................... 7

*Hunter Publ'g Co. v. Caulfield Publ'g, Ltd.*, 1 USPQ2d 1996 (TTAB 1986) ............. 4

*In re Bed & Breakfast Registry*, 791 F.2d 157, 229 USPQ 818 (Fed. Cir. 1986)......... 4

*In re Bright-Crest, Ltd.*, 204 USPQ 591 (TTAB 1979)............................................... 4

*In re Camel Mfg. Co.*, 222 USPQ 1031 (TTAB 1984)................................................ 4

*In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir.1985)................................. 7

*In re Dial-a-Mattress Operating Corp.*, 240 F.3d 1341, 1346, 57 U.S.P.Q.2d 1807
    (Fed. Cir. 2001)....................................................................................................... 4

*In re Gyulay*, 820 F.2d 1216, 3 USPQ2d 1009 (Fed. Cir. 1987)................................. 4

*In re MetPath Inc.*, 223 USPQ 88 (TTAB 1984)........................................................ 4

*In re Oppedahl & Larson LLP*, 373 F.3d 1171, 1173, 71 USPQ2d 1370, 1371
    (Fed. Cir. 2004)....................................................................................................... 4

*Induct–O–Matic Corp. v. Inductotherm Corp.*, 747 F.2d 358, 362 (6th Cir.1984) ...................... 13
*Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 513 (6th Cir. 2007)............... 13
*Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 679 F.3d 410, 419 (6th Cir. 2012)..... 18, 19
*Marshall v. Ohio Univ.*, No. 2:15-cv-775, 2015 WL 1179955 (S.D. Ohio March 13, 2015) ........ 7
*Mktg. Displays, Inc. v. TrafFix Devices, Inc.*, 200 F.3d 929 (6th Cir. 1999) ............................. 15
*Nationwide Mutual Ins. Co. v. Tryg International Ins. Co.,* 91 F.3d 790 (6th Cir. 1993)............. 6
*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345 (1977) ............................... 7
*News Herald v. Ruyle*, 949 F. Supp. 519 (N.D. Ohio 1996)........................................................ 7
*Overstreet v. Lexington–Fayette Urban Cnty. Gov't,* 305 F.3d 566 (6th Cir. 2002) ................... 7
*Proctor & Gamble Co. v. Ranir, LLC*, 1:17-CV-185, 2017 WL 3537197
    (S.D. Ohio Aug. 17, 2017)....................................................................................................... 6
*Progressive Distribution Servs., Inc. v. United Parcel Serv., Inc.*, 856 F.3d 416
    (6th Cir. 2017)............................................................................................................... 18, 19
*Reed v. Cleveland Bd. of Educ.*, 581 F.2d 570 (6th Cir. 1978)..................................................... 8
*Reid v. Hood*, No. 1:10 CV 2842, 2011 WL 251437 (N.D. Ohio Jan. 26, 2011)......................... 7
*Rios v. Blackwell*, 345 F. Supp. 2d 833 (N.D. Ohio 2004).......................................................... 7
*Tefal., S.A. v. Products International Company*, 529 F.2d 495 (3d Cir. 1976) .......................... 10
*Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623 (6th Cir. 2002) ...................................... 18
*Tumblebus Inc. v. Cranmer*, 399 F.3d 754 (6th Cir. 2005)......................................................... 12
*Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763 (1992) ...................................................... 12
*U.S. Sprint Commc'ns Co. Ltd. P'ship v. Mr. K's Foods, Inc.*, 1994-Ohio-504,
    68 Ohio St.3d 181, 624 N.E.2d 1048, 1051 (1994) .............................................................. 6
*United States Patent & Trademark Office v. Booking.com B. V.*, 140 S.Ct. 2298, 2303
    (2020)................................................................................................................................ 14
*Wainscott v. St. Louis–San Francisco Ry. Co.* (1976), 47 Ohio St.2d 133,
    351 N.E.2d 466 (1976).......................................................................................................... 9
*West Point Mfg. Co. v. Detroit Stamping Co.,* 222 F.2d 581 (6th Cir.1955).............................. 15
*Zamfir v. Casperlabs, LLC*, 21CV474-GPC(AHG), 2021 WL 1164985
    (S.D. Cal. Mar. 26, 2021)..................................................................................................... 22

**Statutes**

15 U.S.C. § 1116(a) ................................................................................................................ 22
15 U.S.C. § 1125(a) ................................................................................................................ 11
15 U.S.C. § 1391(b) ................................................................................................................ 10
28 U.S.C. § 1367(c) ................................................................................................................ 10
28 U.S.C. § 1391(b) .................................................................................................................. 6
R.C. 2307.382(A)(1) ................................................................................................................. 9

**Other Authorities**

Britannica, The Editors of Encyclopaedia. "Lantern Festival". *Encyclopedia Britannica* ............ 2
TMEP §1209.01(b) ................................................................................................................... 4

**Treatises**

15 Wright, Miller & Cooper, *Federal Practice and Procedure*, § 3806 (1976).......................... 10
2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competiti*on § 11.83
    (4th ed.))............................................................................................................................ 18

NOW COMES Defendant, the Zoological Society of Pittsburgh a/k/a Pittsburgh Zoo & PPG Aquarium (the "Pittsburgh Zoo"), and for its Memorandum in Opposition to Plaintiff, the Board of Park Commissioners of the Cleveland Metropolitan Park District ("Plaintiff")'s Amended Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion"), hereby states as follows:

## I.    STATEMENT OF ISSUES

1) Whether this Court has personal jurisdiction over Defendant;

2) Whether venue is proper in this district;

3) Whether the Court should grant a temporary restraining order without notice where Plaintiff has failed to show that immediate and irreparable injury, loss, or damage will result to the movant before Defendant can be heard in opposition; or, alternatively, whether the Court should grant a preliminary injunction to enjoin the Pittsburgh Zoo from using the phrase "Asian Lantern Festival" in connection with its upcoming event, where the term "Asian Lantern Festival" is generic and thus unprotectable, and Plaintiff has failed to demonstrate by clear and convincing evidence a likelihood of success on the merits, irreparable harm, or any of the other necessary factors to justify the imposition of a preliminary injunction.

## II.    SUMMARY OF ARGUMENT

The instant Motion – and the entirety of the above-captioned suit – represents Plaintiff's audacious attempt to claim intellectual property rights in the phrase "Asian Lantern Festival" when used in association with an event and names such event which  grounds in traditions of an Asian cultural festival that has existed for over two millennia and has been more recently celebrated and perpetuated in the acknowledgement of the historic festival and to share the various aspects of the rich cultural heritage of the original Chinese and Southeast Asian festival.  Plaintiff's theory – that because they have held three Asian Lantern Festivals in the past, that therefore they own rights

1

that rise to the level of trademark rights to the generic moniker "Asian Lantern Festival" – fails to

pass the exacting scrutiny this Court must apply to requests for the extreme relief Plaintiff requests.

Plaintiff's alleged and purported is generic, and therefore, does not rise to the level of a protectable

mark, and, arguendo, even if there is some meritorious basis to Plaintiffs claim of trademark rights,

which Defendant denies, there is no likelihood of confusion between the parties' respective use of

the phrase "Asian Lantern Festival", for the reason stated herein.  Further, this Court lacks personal

jurisdiction over the Pittsburgh Zoo, and venue is improper in this judicial district.  For the reasons

that follow, Plaintiff's Motion should be denied.

## III.    BACKGROUND

### A.    History of the Asian Lantern Festival

Originating in China more than two thousand years ago, the Lantern Festival is one of the

most recognizable East Asian cultural events in the world. From the *Encyclopedia Britannica:*

> **Lantern Festival**, also called **Yuan Xiao Festival**, holiday celebrated in China and
> other Asian countries that honours [sic] deceased ancestors on the 15th day of the
> first month (Yuan) of the lunar calendar. The Lantern Festival aims to promote
> reconciliation, peace, and forgiveness. The holiday marks the first full moon of the
> new lunar year and the end of the Chinese New Year (see Lunar New Year). During
> the festival, houses are festooned with colourful [sic] lanterns, often with riddles
> written on them; if the riddle is answered correctly, the solver earns a small gift.
> Festival celebrations also include lion and dragon dances, parades, and fireworks.
> Small glutinous rice balls filled with fruits and nuts, called yuanxiao or tangyuan,
> are eaten during the festival. The round shape of the balls symbolizes wholeness
> and unity within the family.
>
> The Lantern Festival may originate as far back as the Han dynasty (206 bce to 220
> ce), when Buddhist monks would light lanterns on the 15th day of the lunar year in
> honour [sic] of the Buddha. The rite was later adopted by the general population
> and spread throughout China and other parts of Asia. A legend concerning the
> festival's origin tells the tale of the Jade Emperor (You Di), who became angered
> at a town for killing his goose. He planned to destroy the town with fire, but he was
> thwarted by a fairy who advised the people to light lanterns across the town on the
> appointed day of destruction. The emperor, fooled by all the light, assumed the
> town was already engulfed in flames. The town was spared, and in gratitude the

people continued to commemorate the event annually by carrying colourful [sic] lanterns throughout the town.[1]

Today, Lantern Festivals are celebrated in a multitude of cities and countries through the world.  "Asian Lantern Festivals" have been held in Paris, Auckland, New Zealand, Estonia, and in dozens of cities in the United States, and continue to be popularized by specialized festival producers such as Tianyu Arts & Culture, Inc. ("Tianyu"), who create and produce self-contained festivals for cities and cultural institutions throughout the world.

### B. Tianyu Arts & Culture, Inc.

Over the past 12 years, Tianyu Arts & Culture, Inc. ("Tianyu") has become the largest producer of "turnkey" Asian lantern festival events in the United States, working with zoos, botanical gardens, and other civic institutions in 27 domestic cities in 21 states, including Los Angeles, California; Chicago, Illinois; Philadelphia, Pennsylvania; Milwaukee, Wisconsin; Boston, Massachusetts; Louisville, Kentucky; Des Moines, Iowa; Tampa, Florida; and, most importantly for purposes of this suit, Cleveland , Ohio and Pittsburgh, Pennsylvania.

Tianyu explains on its website:

In the 20th century, the Lantern Festival has become a world-renowned event. More organizations are committed to promoting this unique culture to the world, and we are one of the earliest Lantern Festival hosts overseas.

…

 Local people have become familiar with its new names, such as China lights, **Asian Lantern Festival**, Dragon Lights, and more, instead of just Chinese Lantern Festival that we are familiar with.[2]

---

[1]  Britannica, The Editors of Encyclopedia. "Lantern Festival". *Encyclopedia Britannica*, *available at* https://www.britannica.com/topic/Lantern-Festival. Accessed 3 July 2021.

[2]  "Explore the Modern Lanterns Use in Our Chinese Light Festivals," *Tianyu Arts & Culture, Inc.*, https://tianyuculture.us/lantern-festivals/ (accessed on July 4, 2021, at 10:29 p.m. EST) (emphasis added).

3

Tianyu is producing the Asian lantern festivals being held at both the Cleveland and Pittsburgh Zoos this summer, as just two of the many festivals they have produced and continue to produce in a multitude of American cities (*see* Exhibit A - Tianyu-produced lantern festivals in the U.S.).

### C.     Use of the phrase "Asian Lantern Festival"

The use of the specific phrase "Asian Lantern Festival" is hardly unique to Plaintiff's program/event.  This wholly generic phrase is used as the name of such festivals all over the world; indeed, it is difficult to write about these traditional festivals without using the phrase "Asian Lantern Festival" or a substantially similar phrase.[3], because the phrase is both used and understood by the relevant public to refer to that type of event.

Contrary to Plaintiff's assertion, it did not "originate the name 'Asian Lantern Festival.'" Even limited to the universe of domestic festivals hosted by civic institutions, Plaintiff's first use of the phrase in 2018 was preceded at a minimum by the "St. Pete Asian Lantern Festival" held in St. Petersburg, Florida in 2017.[4]  The term "Asian Lantern Festival" is or has been used in the past three years for similar events at the Louisville Zoo, the Central Florida Zoo & Botanical Gardens, the Reid Park Zoo in Tucson Arizona, and the Blank Park Zoo in Des Moines, Iowa, along with the related term "Asian Lantern Spectacular" for a similar event at Roger Williams Zoo in Providence, Rhode Island (see Exhibit B - "Asian Lantern Festivals" in the U.S.).

Given the lengthy history of use of the term "Asian Lantern Festival" and the number of more recent events using the term,  it is evident that the term "Asian Lantern Festival" can never

---

[3] These festivals are often referred to as "Chinese Lantern Festivals," a distinction without a difference, as the festival originated in China but is celebrated in a multitude of Asian countries.

[4] Emily Bowers, "St Pete Hosts Annual Asian Lantern Festival," *Connect: USFSP's Digital Perspective* (Nov, 7, 2017), available at http://usfspconnect.com/st-pete-hosts-annual-asian-lantern-festival/.

rise to being a mark, and is in fact, the antithesis of a mark,  because it is incapable of denoting the unique source.

Plainly, even Plaintiff itself is aware that the phrase "Asian Lantern Festival" alone is generic and requires additional distinctive detail – such as a miscellaneous graphic design – in order create a trademark and to avail itself of protection under either the Lanham Act or common law trademark protection.

Plaintiff has failed to disclose to the Court or to Defendant that, three days before filing the instant suit, Plaintiff filed a federal trademark application, not for the phrase "Asian Lantern Festival" alone, but instead for the "Asian Lantern Festival Cleveland Metroparks Zoo with design", as noted below.



(*see* Exhibit  C - U.S. Trademark Application 90801394).  Plaintiff's purported confidence in the strength of their alleged and unregistered mark is belied by this filing, along with the fact that it failed to disclose the filing to the Court or the Defendant.

In the alternative, even if the Court determines the phrase "Asian Lantern Festival" is not generic, the phrase is merely descriptive and cannot be granted protection as a trademark without a showing of acquired distinctiveness, which Plaintiff has not made and cannot make.

A prior filed trademark application is illustrative of this issue.  In 2007, a third party had

tried to register "Spectacular Asian Lantern Festival" for "entertainment in the nature of Asian cultural festival" by filing an application with the United States Patent and Trademark Office ("USPTO"). On July 13, 2007, the USPTO initially denied registration on the grounds "the proposed mark merely describes the applicant's services." (Exhibit D - : U.S. Trademark Application 77244713). The USPTO went on:

> A mark is merely descriptive under Section 2(e)(1) if it describes an ingredient, quality, characteristic, function, feature, purpose or use of the specified goods and/or services. In re Gyulay, 820 F.2d 1216, 3 USPQ2d 1009 (Fed. Cir. 1987); In re Bed & Breakfast Registry, 791 F.2d 157, 229 USPQ 818 (Fed. Cir. 1986); In re MetPath Inc., 223 USPQ 88 (TTAB 1984); In re Bright-Crest, Ltd., 204 USPQ 591 (TTAB 1979); TMEP §1209.01(b). A mark that describes an intended user of a product or service is also merely descriptive within the meaning of Section 2(e)(1). See Hunter Publ'g Co. v. Caulfield Publ'g, Ltd., 1 USPQ2d 1996 (TTAB 1986); In re Camel Mfg. Co., 222 USPQ 1031 (TTAB 1984).

> Asian Lantern Festival is the apt descriptive name of the services. Note the two attached Internet articles about Asian Lantern Festivals. This is just a representative sampling of the numerous stories on the subject. . . . .

> For the purpose of a Section 2(e)(1) analysis, a term need not describe all of the purposes, functions, characteristics or features of the services to be merely descriptive. In re Dial-a-Mattress Operating Corp., 240 F.3d 1341, 1346, 57 U.S.P.Q.2d 1807 (Fed. Cir. 2001). It is enough if the term describes only one significant function, attribute or property. In re Oppedahl & Larson LLP, 373 F.3d 1171, 1173, 71 USPQ2d 1370, 1371 (Fed. Cir. 2004) ("[A] mark may be merely descriptive even if it does not describe the 'full scope and extent' of the applicant's goods or services.") (quoting In re Dial-A-Mattress Operating Corp., 240 F.3d 1341, 1346, 57 USPQ2d 1807, 1812 (Fed. Cir. 2001)).

*Id.*[5] The USPTO further clarified that the application could be amended to the Supplemental Register, but only if it disclaimed the phrase "Asian Lantern Festival" as descriptive. *Id.*

---

[5] The USPTO decision should not be characterized as a finding that the term "Asian Lantern Festival" is in fact not generic. As the Sixth Circuit has observed: "The Patent and Trademark Office examining attorneys generally deny registration of allegedly generic terms by saying that they are 'descriptive' under § 2(e). Thus, while such a characterization by the Patent and Trademark Office concedes at least merely descriptiveness, it does not constitute evidence that the Patent and Trademark Office has determined that the disclaimed words . . . are merely descriptive but not generic nor commonly descriptive." *Bath & Body Works, Inc. v. Luzier Personalized Cosmetics, Inc.*, 76 F.3d 743, 748 (6th Cir. 1996) (internal quotations omitted).

## IV.    COUNTERSTATEMENT OF FACTS

Plaintiff's allegations of fact in its Complaint and Motion contain, *inter alia*, several incorrect statements and omissions.[6]

First, Plaintiff did not "originate the name ASIAN LANTERN FESTIVAL in spring 2018;" on the contrary, the term is a well-known generic phrase used in connection similar lantern festivals all over the world.  *See, e.g.*, Ex. C (denying US federal trademark registration for the purported mark "SPECTACULAR ASIAN LANTERN FESTIVAL" on the grounds the purported mark is merely descriptive and determining the phrase "Asian Lantern Festival" would need to be disclaimed as an apt name for the services).

Second, in describing the legal correspondence between Plaintiff and the Pittsburgh Zoo, Plaintiff included copies of its communications to the Pittsburgh Zoo, but pointedly omitted all correspondence received in return and misstated that there was no response for the Pittsburgh Zoo. This concealment of the Pittsburgh Zoo's legal response is particularly egregious in light of the relief requested in the instant motion – i.e., that the Court grant a temporary restraining order against the Pittsburgh Zoo without notice.[7]

## V.    LEGAL STANDARD

### A.    Personal Jurisdiction

A district court may not grant a preliminary injunction if it lacks jurisdiction over the claim before it. *See City of Alexandria v. Helms,* 728 F.2d 643, 645-46 (4th Cir. 1984); *Cooper Indus., Inc. v. U.S. E.P.A.*, 775 F. Supp. 1027, 1036 (W.D. Mich. 1991).

---

[6] The instant section is not intended to serve as an Answer or Responsive Pleading to Plaintiff's Complaint, and the fact that a particular allegation of fact or conclusion of law made by Plaintiff in its Complaint is not addressed herein should in no way be construed as  an admission as to the veracity of said allegation or conclusion.  Pittsburgh Zoo will file a separate responsive pleading to the Complaint within the proper time as set forth in the Federal Rules of Civil Procedure.

[7] A copy of the correspondence referenced in Paragraph 47 of Plaintiff's Complaint – but not attached to the Complaint – is attached hereto as Exhibit E.

The exercise of personal jurisdiction over a foreign corporation is valid only if it meets both the long-arm statute of the forum state and constitutional due process requirements. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000); *see also Nationwide Mutual Ins. Co. v. Tryg International Ins. Co.,* 91 F.3d 790, 793 (6th Cir. 1993) (citing *Reynolds v. International Amateur Athletic Fed'n,* 23 F.3d 1110, 1115 (6th Cir. 1994)); *see also U.S. Sprint Commc'ns Co. Ltd. P'ship v. Mr. K's Foods, Inc.*, 1994-Ohio-504, 68 Ohio St.3d 181, 183-84, 624 N.E.2d 1048, 1051 (1994) .

**B.    Venue**

A district court faced with an argument that venue is improper must resolve that issue prior to addressing the merits of any claim, including a preliminary injunction.  *E.g.*, *Proctor & Gamble Co. v. Ranir, LLC*, 1:17-CV-185, 2017 WL 3537197, at *4 (S.D. Ohio Aug. 17, 2017) (collecting cases).

Section 1391(b) of Title 28 of the United States Code provides that where jurisdiction is not based solely on diversity of citizenship, an action may be brought "only in the judicial district where all defendants reside, or where the claim arose." 28 U.S.C. § 1391(b).

**C.    Temporary Restraining Order and Preliminary Injunction**

If there is "notice to the other side and an opportunity to be heard," the standards for issuance of a temporary restraining order and a preliminary injunction are the same," namely, whether: "1) the plaintiffs have a strong likelihood of success on the merits; 2) the plaintiffs would suffer irreparable injury without the injunction; 3) issuance of the injunction would cause substantial harm to others; and 4) the public interest would be served by issuance of the injunction."  *Rios v. Blackwell*, 345 F. Supp. 2d 833, 835 (N.D. Ohio 2004) (citing *Chabad of Southern Ohio & Congregation Lubavitch v. City of Cincinnati,* 363 F.3d 427, 432 (6th Cir. 2004); *News Herald v. Ruyle*, 949 F. Supp. 519, 521 (N.D. Ohio 1996)); *see also Reid v. Hood*, No. 1:10

8

CV 2842, 2011 WL 251437, at *2 (N.D. Ohio Jan. 26, 2011) (Gwin, J.) (noting that the "standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo" (citing *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977))).  The Court need not make specific findings concerning each of the four factors "if fewer factors are dispositive of the issue."  *Rios*, 345 F. Supp. 2d at 835 (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir.1985)).

"A preliminary injunction is reserved for only the most egregious case, and should not be extended to cases which are doubtful or do not come within well-established principles of law." *Bonnell v. Lorenzo*, 241 F.3d 800, 826 (6th Cir. 2001). The moving party has the "burden of proving that the circumstances clearly demand [an injunction]." *Overstreet v. Lexington–Fayette Urban Cnty. Gov't,* 305 F.3d 566, 573 (6th Cir. 2002).

"The burden of proving that the circumstances 'clearly demand' such an extraordinary remedy is a heavy one: '[t]he party seeking the injunction must establish its case by clear and convincing evidence.'" *Marshall v. Ohio Univ.*, No. 2:15-cv-775, 2015 WL 1179955, at *4 (S.D. Ohio March 13, 2015) (quoting *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002)); *Honeywell, Inc. v. Brewer-Garrett Co.*, 135 F.3d 1331, No. 97-3673, 1998 WL 152951, at *3 (6th Cir. March 23, 1998)).  While no single factor is dispositive, "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

## VI.    ARGUMENT

### A.    The Court Should Hold a Hearing Before Granting a Temporary Restraining Order.

Rule 65(b) of the Federal Rules of Civil Procedure permits a trial court to issue a temporary restraining order *ex parte* <u>only</u> if "(A) specific facts in an affidavit or a verified complaint clearly

9

show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b). These restrictions "reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *First Tech. Safety Sys, Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993) (quoting *Reed v. Cleveland Bd. of Educ.*, 581 F.2d 570, 573 (6th Cir. 1978) (in turn quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974))).  Accordingly, *ex parte* restraining orders should be issued only to preserve the status quo, and even in that circumstance only for so long as necessary to hold a hearing.  *Id.*

The "normal" circumstances where *ex parte* relief may be appropriate are where notice to the adverse party is impossible (as the party is unknown or unable to be located), or where notice to the defendant would render further prosecution of the action futile, such as where the adverse party has a history of destroying evidence.  *Id.* at 650.

In the instant case, Plaintiff's counsel has not certified in writing any reason why notice or a hearing should not be required.  Nor is Plaintiff's request for relief "preserve the status quo" meritorious – on the contrary, it would force the Pittsburgh Zoo to immediately rebrand its entire Asian Lantern Festival event, at massive expense in the form of new advertising and marketing materials and efforts, as well as, creating the potential  intense customer confusion where none to date exists, all without the opportunity for a hearing.  This is not preservation of the status quo; it is manipulation of the court system to grant Plaintiff a unwarranted trademark rights and economical harm and disadvantage to the Pittsburgh Zoo by eliminating its ability to advertise and promote its event using the name of this type of event without permitting the Pittsburgh Zoo an opportunity to defend itself before the imposition of such an extreme remedy.

10

Accordingly, as Plaintiff has made no showing why *ex parte* relief would be appropriate, the Pittsburgh Zoo respectfully asks that the Court set this matter for a hearing prior to the issuance of any order granting any portion of the injunctive relief sought by Plaintiff.

**B.  This Court Lacks Personal Jurisdiction over Defendant Pittsburgh Zoo.[8]**

Because Ohio's long-arm jurisdictional statute, R.C. 2307.382(A)(1), is so broad, determinations of personal jurisdiction must be made on a case-by-case basis.  The Ohio Supreme Court has established that the mere solicitation of business by a foreign corporation does not constitute transacting business in Ohio. *Wainscott v. St. Louis–San Francisco Ry. Co.* 47 Ohio St. 2d 133, 351 N.E.2d 466 (1976). Instead, as the United States Supreme Court has stated, a nonresident's ties must "create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

In the instant case, the only allegation of this Court's personal jurisdiction over the Pittsburgh Zoo is that it has sent marketing materials to potential customers in Ohio.  This is plainly insufficient to establish personal jurisdiction over the Pittsburgh Zoo, a foreign corporation, within the State of Ohio.  There are no specific allegations of any actual business dealings of the Pittsburgh Zoo within the State of Ohio, nor are there any allegations that Plaintiff or any other individual or entity have actually suffered any injury to date.  Accordingly, for these reasons and those contained within the Pittsburgh Zoo's forthcoming Motion to Dismiss, this Court lacks personal jurisdiction over the Pittsburgh Zoo.  The instant Motion must therefore be denied.

**C.  Venue Is Improper in This Judicial District.**

---

[8] The Pittsburgh Zoo intends to more fully plead its lack of personal jurisdiction and lack of venue arguments in a formal motion to dismiss pursuant to Federal Rule of Civil Procedure 12.  In light of the extraordinarily time-sensitive nature of the request for relief in Plaintiff's Motion, however, the Pittsburgh Zoo includes the gravamen of its jurisdictional and venue arguments here, in order to preserve its objections to both personal jurisdiction and venue for purposes of this Court's ruling on the instant Motion.

Where, as here, both plaintiff and defendant are not residents of the judicial district (Plaintiff is resident and Defendant is not) where plaintiff has brought its claim, and jurisdiction is not based solely on diversity of citizenship, venue is proper only where the claim arose.  15 U.S.C. § 1391(b).  For purposes of venue, a claim typically arises where the injury occurs. *See generally*, 15 Wright, Miller & Cooper, *Federal Practice and Procedure*, § 3806 (1976). When determining where a Lanham Act claim arose for purposes of establishing venue, the proper inquiry is where the infringing activity occurred. *See Tefal., S.A. v. Products International Company*, 529 F.2d 495, 496 n.1 (3rd Cir. 1976).

The instant complaint alleges that the Pittsburgh Zoo is violating the Lanham Act by sponsoring an Asian lantern festival in Pittsburgh, Pennsylvania using the phrase "Asian Lantern Festival" in which Plaintiff (dubiously) claims trademark rights.  Plaintiff generally alleges - without specifics – that the Pittsburgh Zoo has solicited customers in the State of Ohio, but fails to allege that the Pittsburgh Zoo is actually providing any goods or services using the name "Asian Lantern Festival" anywhere within the Northern District of Ohio.  Accordingly, Plaintiff's Lanham Act claim did not "arise" in this district.[9]  As the Pittsburgh Zoo is not a resident of Ohio and the claims conferring federal subject matter jurisdiction over this action did not arise in the Northern District of Ohio, venue is improper in this judicial district and the above-captioned complaint should be dismissed or, in the alternative, transferred to the Western District of Pennsylvania.

### D.     The Court Should Deny Plaintiff's Motion for a Temporary Restraining Order.

Plaintiff cannot meet its burden of demonstrating a likelihood of success on the merits of its Complaint by clear and convincing evidence, a defect that is fatal to its Motion.  *See Gonzales*, 225 F. 3d at 625.  The prosecution history, frequent usage, and common-sense review of the term

---

[9] Absent jurisdiction and/or venue in this District, this Court has the discretion to decline supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c), and the Pittsburgh Zoo would urge this Court to exercise that discretion in order to prevent the risk of piecemeal litigation.

"Asian Lantern Festival" can lead to no other conclusion than that the phrase is generic and thus not entitled to even common law trademark protection.  Even if the mark were considered merely descriptive, the frequency and use of the term in common parlance to describe the yearly Asian lantern festivals held all over the world for over **two thousand years** and the more recent cultural events celebrating that historic tradition belie Plaintiff's argument that its use of the term for the past **three years** to describe its own festival have somehow imbued the term with secondary meaning unique to Plaintiff, and that the term, has therefore, has risen to a mark owned by Plaintiff. In addition, Plaintiff has failed to put forward a single piece of evidence – even anecdotal – indicating overlap in advertising or marketing regions between Plaintiff and the Pittsburgh Zoo, or identifying even a single instance of actual or potential customer confusion.  This paucity of evidence cannot even come close to meeting the clear and convincing standard necessary, and thus Plaintiff's motion must fail.

1. **Plaintiff Cannot Show a Likelihood of Success on the Merits of its Claims.[10]**

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides "a right of action to persons engaged in interstate and foreign commerce, against deceptive and misleading use of words, names, symbols, or devices, or any combination thereof, which have been adopted by a ... merchant to identify his goods and distinguish them from those manufactured by others[.]" *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 921 (6th Cir. 2003) (quoting *Federal–Mogul–Bower Bearings, Inc. v. Azoff,* 313 F.2d 405, 408 (6th Cir.1963)); *see also Frisch's Restaurant, Inc. v. Shoney's, Inc.,* 759 F.2d 1261, 1264 (6th Cir. 1985); *Frisch's Restaurants, Inc. v. Elby's Big Boy*

---

[10] Claims under the Ohio Deceptive Trade Practices Act (Count II of Plaintiff's Complaint) are substantially identical to the unfair competition standards of the Lanham Act, and courts thus apply "essentially the same analysis as that applied in assessing the law of unfair competition under the federal statutes." *Bedford Auto Dealers Assn. v. Mercedes Benz of N. Olmsted*, 2012 Ohio-927 ¶ 12 (8th Dist. 2012); *accord Worthington Foods, Inc. v. Kellogg Co.,* 732 F. Supp. 1417, 1427 (S.D. Ohio 1990).  Thus, as Plaintiff did in its Motion, both of Plaintiff's claims will be discussed under a single standard for purposes of this Memorandum.

*of Steubenville, Inc.,* 670 F.2d 642, 647 (6th Cir. 1982).  This Section grants unregistered trademarks substantially similar protection as those that are registered.  *See Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768 (1992) ("[I]t is common ground that § 43(a) protects qualifying unregistered trademarks and that the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a).")  However, "[i]f a trademark is not federally registered, once the defendant raises genericness as a defense, plaintiff must prove lack of genericness."  *Bath & Body Works, Inc. v. Luzier Personalized Cosmetics, Inc.*, 76 F.3d 743, 748 (6th Cir. 1996).

To succeed on an unregistered trademark infringement claim, Plaintiff must show that: 1) it has a protectable trademark and 2) that the Pittsburgh Zoo's use of the "Asian Lantern Festival" phrase results in a likelihood of confusion.  *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760-61 (6th Cir. 2005).  To be protectable, a mark must be distinctive. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992). A mark is distinctive if it either: 1) is inherently distinctive or 2) has acquired distinctiveness through secondary meaning. *Tumblebus*, 399 F.3d at 761.  Marks are classified in order of increasing distinctiveness as: 1) generic; 2) descriptive; 3) suggestive; 4) arbitrary; or 5) fanciful. *Id.* A mark is "inherently distinctive" if it is suggestive, arbitrary, or fanciful. *Id.* A mark that is not inherently distinctive can be rendered distinctive only if it acquires a secondary meaning. *Id.* Generic terms are not protectable. *Id.*

Because the term "Asian Lantern Festival" is generic, it can never become a mark, and therefore, it is not protectable. Nor is the term "Asian Lantern Festival", as alleged and purportedly used by Plaintiff, protectable because it is merely descriptive.  Plaintiff has not and cannot make a showing that its use of the phrase "Asian Lantern Festival" has acquired secondary meaning as to source, for the reasons previously set forth herein.  *Arguendo*, even if Plaintiff were successful in

establishing some trademark rights, Plaintiff cannot show a likelihood of confusion between its alleged mark and the use of the phrase "Asian Lantern Festival" by the Pittsburgh Zoo.. Accordingly, Plaintiff cannot demonstrate by clear and convincing evidence that it is likely to prevail on its contention that it has trademark rights in arising from its use of the term "Asian Lantern Festival", and, without trademark rights in the phrase "Asian Lantern Festival", the issue of a likelihood of confusion does not even arise.  Thus, Plaintiff cannot meet its burden and its Motion must fail.

> **a)**  **The term "Asian Lantern Festival" is not protectable, as it is a generic phrase.**

Plaintiff argues alternatively that the term "Asian Lantern Festival" is distinctive either because it is suggestive or because it is a descriptive term that has gained secondary meaning.  It is neither, and Plaintiff cannot meet its burden to demonstrate by a preponderance of the evidence that it is likely to be otherwise.

A suggestive mark is one that "suggests rather than describes an ingredient or characteristic of the goods and requires the observer or listener to use imagination and perception to determine the nature of the goods."  *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 513 (6th Cir. 2007).  Plaintiff puts forth only a conclusory sentence or two in defense of this position, and it can be comfortably discarded by the Court, as all three words in the term – "Asian," "Lantern," and "Festival," are generic terms that explicitly name the event and leave no room for imagination or perception to interpret the service being offered.

"A generic or common descriptive term is one which is commonly used as the name or description of a kind of goods. It cannot become a trademark under any circumstances." *Induct–O–Matic Corp. v. Inductotherm Corp.*, 747 F.2d 358, 362 (6th Cir.1984).  As the Supreme Court recently observed:

> At the lowest end of the distinctiveness scale is "the generic name for the goods or services." §§ 1127, 1064(3), 1065(4). The name of the good itself (*e.g.*, "wine") is incapable of "distinguish[ing] [one producer's goods] from the goods of others" and is therefore ineligible for registration. § 1052; see § 1091(a). Indeed, generic terms are ordinarily ineligible for protection as trademarks at all. See Restatement (Third) of Unfair Competition § 15, p. 142 (1993); *Otokoyama Co. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270 (CA2 1999) ("[E]veryone may use [generic terms] to refer to the goods they designate.").

*United States Patent & Trademark Office v. Booking.com B. V.*, 140 S.Ct. 2298, 2303 (2020).

Thus, whether a term such as "Asian Lantern Festival" is generic turns on whether that term, taken as a whole, signifies to consumers the category or type of celebrations, originating in China, of the end of the Lunar New Year, featuring colorful lanterns of a distinctive Eastern style, as well as performances, small gifts or handicrafts and food. *See id.* at 2304; *accord Gen. Conference Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 415 (6th Cir. 2010) ("[T]he test for whether a term is generic and therefore ineligible for trademark protection is whether the public perceives the term primarily as the designation of the article." (internal quotation omitted)).

Plaintiff's alleged mark fails this test. A consumer would describe a similar but competing event as an "Asian Lantern Festival." *See id.* at 2305. A consumer looking to compare or rate various celebrations of this type might create a blog post entitled "Top 10 Asian Lantern Festivals;" indeed, a consumer recently compiled just such a list.[11] *See id.*

In short, the average consumer would clearly associate the phrase "Asian Lantern Festival" with a class or type of celebration, not a particular source (and certainly not Plaintiff). It is a category, not a distinctive signifier of Plaintiff's services, and as such is plainly a generic term not entitled to protection.

       **b)**    **Even if the term "Asian Lantern Festival" were considered descriptive, Plaintiff cannot meet its burden of establishing secondary meaning in the phrase.**

---

[11] Jolie Liem, "10 Epic Lantern Festivals in Asia," SonaBee by Sonasia Holiday (May 7, 2021), *available at* https://sonasia-holiday.com/sonabee/asian-lantern-festival. ("Top 10 Epic Asian Lantern Festivals")

16

A merely descriptive term is not afforded protection under the Lanham Act unless it has acquired secondary meaning.  To acquire secondary meaning, a descriptive term must "prompt the affirmation, 'That is the article I want because I know its source,' and not the negative inquiry as to 'Who makes that article?' In other words, the article must proclaim its identification with its source, and not simply stimulate inquiry about it." *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 311 (6th Cir. 2001) (quoting *Ferrari S.P.A. Esercizio v. Roberts,* 944 F.2d 1235, 1239 (6th Cir. 1991) (in turn quoting *West Point Mfg. Co. v. Detroit Stamping Co.,* 222 F.2d 581, 595 (6th Cir.1955)).  Courts in the Sixth Circuit use a seven factor test to determine whether a descriptive mark has acquired secondary meaning: (1) direct consumer testimony; (2) consumer surveys; (3) exclusivity, length, and manner of use; (4) amount and manner of advertising; (5) amount of sales and number of customers; (6) established place in the market; and (7) proof of intentional copying. *Mktg. Displays, Inc. v. TrafFix Devices, Inc.*, 200 F.3d 929, 937 (6th Cir. 1999), *rev'd on other grounds* 532 U.S. 23 (2001). "[I]t is the party seeking protection of a mark who bears the burden of proving that secondary meaning has attached." *Boston Beer Co. Ltd. P'ship v. Slesar Bros. Brewing Co., Inc.,* 9 F.3d 175, 182 (1st Cir. 1993) (citing *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1041 (2d Cir. 1992); *Blinded Veterans Assoc. v. Blinded Am. Veterans Found.*, 872 F.2d 1035, 1041 (D.C. Cir. 1989)). "The evidentiary burden necessary to establish secondary meaning is substantial." *Burke–Parsons–Bowlby Corp. v. Appalachian Log Homes, Inc.*, 871 F.2d 590, 596 (6th Cir. 1989). Secondary meaning is established when a preponderance of the evidence demonstrates "that the attitude of the consuming public toward the mark denotes 'a single thing coming from a single source.'" *Id.* at 596 (quoting *Aloe Creme Labs. v. Milsan, Inc.*, 423 F.2d 845, 849 (5th Cir. 1970)).

Application of each of the seven factors leads to the unmistakable conclusion that Plaintiff cannot meet its "substantial" burden of demonstrating a likelihood of success on the merits of establishing, *inter alia*, that its alleged mark has acquired secondary meaning.

### (1)     direct consumer testimony and consumer surveys

Despite requesting the extraordinary remedy of a temporary restraining order without notice, Plaintiff produced no evidence or argument concerning direct consumer testimony or consumer surveys.  These factors thus weigh heavily against Plaintiff.

### (2)     exclusivity, length, and manner of use

As described above, the term "Asian Lantern Festival" was in frequent use as the generic name of the traditional annual festivals held to celebrate the end of the Lunar New Year in many Eastern cultures – most prominently China – for over two thousand years.  Plaintiff is using the term in the same manner, and has been doing so for only three years.  Its formal usage in the United States has been preceded by, at a minimum, the Asian Lantern Festival held in St. Petersburg in 2017.  In addition, as set forth in Exhibit B, Plaintiff has not had and continues to not have any exclusive use of the term within the United States.  Plaintiff cannot have exclusive use of the term because the term is the name of similar events held across the United States.  These factors weigh heavily against Plaintiff.

### (3)     amount and manner of advertising, amount of sales, and number of customers

Plaintiff has not provided any evidence regarding its advertising, sales or numbers of customers which demonstrate that its use of the phrase "Asian Lantern Festival" has established a link between the phrase and the Plaintiff, as a unique source for this type of event.  In light of the generic nature of the phrase, the fact that the phrase is the name of the event, and numerous other sources exist for such an event, no quantitative evidence as to advertising, ticket sales or attendees is capable of proving that link.   These factors weigh heavily against Plaintiff.

### (4)    established place in the market

The upcoming Asian lantern festivals in Cleveland and Pittsburgh are two of roughly two dozen substantially similar festivals designed and administered by the same vendor throughout the United States.  There is no indication in Plaintiff's filings that its festival is any more or less established or distinctive than any of the other "turnkey" festivals Tianyu has created for a variety of zoos, botanical gardens, and other civic institutions around the United States.  Plaintiff has provided no market share information to substantiate its claim of acquired distinctiveness. .  This factor weighs heavily against Plaintiff.

### (5)    proof of intentional copying

Plaintiff has presented no compelling evidence of intentional copying.  Its only two allegations regarding this factor are that representatives from the Pittsburgh Zoo visited Plaintiff's festival, and the Pittsburgh Zoo happens to be using the same generic title as the festival being held by Plaintiff.  These festivals are performed throughout the country and officials from the Pittsburgh Zoo wanted to experience one to determine whether it could be a potentially successful event.  Using attendance at one festival as evidence of "proof of copying" would place all of the entities who have engaged Tianyu over the years at odds with one another for "copying" each others' festivals if a representative from one zoo or civic institution deigns to attend a festival at another.  This wholly innocent, commercially responsible behavior does not constitute "proof of intentional copying,"  This final factor weighs against Plaintiff, as well.

As Plaintiff cannot meet its burden of proving by clear and convincing evidence that it is likely to succeed in establishing its use of the phrase "Asian Lantern Festival" has acquired distinctiveness, its Motion should be denied.

### c)    No likelihood of confusion exists

The Court will only reach an analysis of a likelihood of confusion in this case if Plaintiff is deemed to have some protectable trademark rights in the phrase "Asian Lantern Festival" as used in connection with a forthcoming event at the Cleveland Zoo. While the Pittsburgh Zoo contends no such rights exist, in light of the extreme relief sought by Plaintiff, Pittsburgh Zoo, in the alternative, addresses this issue of likelihood of confusion. The analysis of the factors evidence the overreaching basis and arguments of Plaintiff and the harm that would be caused to the Pittsburgh Zoo to not be able to use the generic name itself to describe its event.

The Sixth Circuit has established eight factors to be balanced in determining whether a likelihood of confusion exists between a mark and an allegedly infringing mark: (1) the strength of the plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchasing care; (7) defendant's intent in selecting the mark; (8) likelihood of expansion of the product lines. *Frisch's Restaurants, Inc. v. Elby's Big Boy*, 670 F.2d 642 (6th Cir. 1982). The balance of these factors weighs in favor of the Pittsburgh Zoo and against Plaintiff.

### (1)     strength of mark

The strength of the mark factor concerns the distinctiveness of a mark and the recognition of the mark among the public. *Progressive Distribution Servs., Inc. v. United Parcel Serv., Inc.*, 856 F.3d 416, 427-28 (6th Cir. 2017). The strength evaluation factor contains two separate components: "(1) 'conceptual strength,' or 'placement of the mark on the spectrum of marks,' which encapsulates the question of inherent distinctiveness; and (2) 'commercial strength' or 'the marketplace recognition value of the mark.'" *Id.* (quoting *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 679 F.3d 410, 419 (6th Cir. 2012) (in turn quoting 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 11.83 (4th ed.))).

### (a)     *conceptual strength*

20

A mark's conceptual strength is directly tied to its distinctiveness (i.e., protectability), and thus it "depends partly upon which of four categories it occupies: generic, descriptive, suggestive, and fanciful or arbitrary." *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 631 (6th Cir. 2002).

Here, for the reasons detailed above, Plaintiff's mark is not entitled to trademark protection, as the phrase "Asian Lantern Festival" is generic, or, in the alternative, merely descriptive - that is descriptive without having acquired secondary meaning.  Thus, the conceptual strength of the mark is so weak so as to be unprotectable.  The extensive third party use of the phrase "Asian Lantern Festival" and similar phrases to describe the events based on the traditional lantern festivals held in many Asian countries to celebrate the end of the Lunar New Year, and now held as an experiential cultural event in the United States weakens any claim Plaintiff would otherwise have on its alleged mark to the point of unenforceability.  *See Progressive Distribution Servs., Inc. v. United Parcel Serv., Inc.*, 856 F.3d 416, 429 (6th Cir. 2017) ("Third-party use weakens a mark because the mark is not an identifier for a single source. The presumption is that the third parties have muddled the mark's source." (citations omitted)).

### (b)    commercial strength

A mark's commercial strength is defined as the extent to which the public associates the mark with the product it announces.  *Id.* (citing *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 679 F.3d 410, 419 (6th Cir. 2012).  As with conceptual strength, third-party use weakens the commercial strength of a mark.  *Id.*  ("[P]roof that third parties have extensively used a trademark or similar trademarks in the relevant market may indicate that the trademark is commercially weak.") (citing *Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1109 (6th Cir. 1991)).

As above, Plaintiff's use of the phrase "Asian Lantern Festival" in association with its three-year-old event can hardly be said to be a commercially strong mark when identical events called by the identical name are put on all over the United States by the same vendor, and Asian lantern festivals are traditional cultural events that have occurred annually for thousands of years. It defies logic to suggest that any customer – even one in Cleveland – would associate the term "Asian Lantern Festival" as an event whose sole and unique source is the Cleveland Zoo, and Plaintiff has not offered a shred of even anecdotal evidence to suggest otherwise.  Accordingly, the mark's commercial strength renders it no more protectable than its conceptual strength, which is itself extraordinarily weak, at best and arguably, non-existent.

### (2)    relatedness of services

The relatedness of the events are not in question, because the phrase "Asian Lantern Festival" is the name for the type of event held at the Cleveland Zoo and at Pittsburgh Zoo. Plaintiff's attempts to characterize its event as only a "light show" are disingenuous.  Plaintiff's own website states:

> " . . . This year's festival marks the return of live performances every hour . . . . featuring acrobatics including foot juggling, contortion, martial arts and more  . . . . . Throughout the festival, guests can shop an Asian craft market, and taste a robust variety of culturally-inspired cuisine at the Asian Food Market . . . . . .[12]

It should be noted that Plaintiff does not even list a light show or the related event services set forth above in its recently filed and pending federal trademark applications, Serial No. 90801394.  Arguably, such omission is a tacit recognition that the phrase "Asian Lantern Festival" is the name of such services.

### (3)    similarity of marks

---

[12] Exhibit F

The similarity of the phrases are not in question, because the phrase "Asian Lantern Festival" is generic and unprotectable.  This factor is not relevant to the instant analysis.

### (4)    evidence of actual confusion

Plaintiff concedes that it has alleged no evidence of actual confusion.  While it contends that the absence of allegations or proof on this point should be excused due to a lack of discovery, Plaintiff cannot have it both ways.  Plaintiff is asking the Court to impose the draconian remedy of a restraining order without an opportunity to be heard, while at the same time asking to be excused from the requirement that it present <u>any</u> actual evidence of the confusion that it alleges without evidence is occurring in this case.  Without any evidence of the damage that allegedly needs to be presented, Plaintiff has provided no basis – much less clear and convincing evidence – for the Court to grant the instant Motion.

### (5)    marketing channels

The marketing channels of Plaintiff intends to use for its upcoming event are not completely known, at this time, by the Pittsburgh Zoo, and as such, without discovery, Pittsburgh Zoo cannot respond fully on this factor at this time.    For this reason alone, the remedy of a temporary restraining order is entirely inappropriate, as the mere assertions in Plaintiff's motion papers are without substantiating evidence to meet its burden of proof on this factor.

### (6)    degree of customer care/sophistication

Plaintiff's logic stretches the bounds of credulity with respect to this factor. No conceivable customer would go to the Pittsburgh zoo by accident, believing it was the Cleveland zoo.  Nor can Plaintiff explain how or why the potential patrons of one zoo would believe an event was somehow sponsored by another zoo.  Plaintiff fails to explain how or why a customer would choose not to attend Plaintiff's festival (which occurs prior to the Pittsburgh Zoo's event) in order to attend the event at the Pittsburgh Zoo instead.  Particularly in light of the fact that the events are each created

and operated in turnkey fashion by the same third party vendor (Tianyu), there is nothing about the *name of Plaintiff's festival* that would create value such that a potential customer would choose to attend Plaintiff's festival instead of the festival at the Pittsburgh Zoo, or vice versa.

### (7)    intent

The Pittsburgh Zoo has no intent to "steal" any aspect of Plaintiff's festival.  On the contrary, the moniker "Asian Lantern Festival" is so plainly a generic description of the event itself that it was frankly inconceivable that a producing entity such as Plaintiff would attempt to claim intellectual property rights associated with the title.  In other words, the Pittsburgh Zoo could not have had any intent to "steal" the alleged mark "Asian Lantern Festival" because there was nothing to steal, as the "mark" is simply the most apt description of the event itself.

### (8)    expansion of product lines

Plaintiff concedes that this factor does not resolve in its favor.

As Plaintiff has failed to establish by clear and convincing evidence a likelihood of success on the merits, its motion for temporary restraining order and preliminary injunction must fail and there is no need for the Court to consider the additional factors.  The additional factors weigh in favor of Pittsburgh Zoo as well, however.

### 2.    Plaintiff has Failed to Demonstrate Irreparable Harm.

Plaintiff relies on the newly amended 15 U.S.C. § 1116(a), which creates a rebuttable presumption of irreparable harm upon a showing of a likelihood of success on the merits.  In the instant case, however, Plaintiff *has not shown a likelihood of success on the merits*, and thus the "rebuttable presumption" of § 1116(a) does not apply.  *See Zamfir v. Casperlabs, LLC*, 21CV474-GPC(AHG), 2021 WL 1164985, at *9 (S.D. Cal. Mar. 26, 2021) (agreeing with the defendant that the plaintiff cannot take advantage of § 1116(a) because he did not show a likelihood of success on the merits).  As Plaintiff offers no other basis upon which the Court may rule in its favor on this

24

factor, Plaintiff has not met its burden by clear and convincing evidence and this factor must therefore be weighed in favor of the Pittsburgh Zoo.

### 3.      Issuance of the Injunction Would Cause Substantial Harm to Others.

First, Plaintiff's 2021 festival is scheduled to begin weeks before the Pittsburgh Zoo's festival.  Thus, even if Plaintiff were correct that there could even conceivably be confusion regarding the events, it is unclear how Plaintiff would be damaged.  It cannot seriously be contending that a customer would mistakenly believe that the festival being held at the Pittsburgh Zoo is affiliated with the festival being held in Cleveland, and for that reason would therefore forego attending the festival in Cleveland and instead wait weeks to attend the festival in Pittsburgh instead.  That confluence of events is both entirely illogical and falls woefully short of the clear and convincing evidence standard Plaintiff must meet to prevail on its Motion.

Moreover, the third-party vendor Tianyu would be greatly be affected by the grant of an injunction in this matter, as future customers would rightly be wary about engaging the vendor for future festivals out of concern that they would be blindsided by lawsuits claiming protection over a plainly descriptive title used to communicate to the public exactly what the event is.

Even putting aside the substantial funds the Pittsburgh Zoo has incurred in promotional materials, advertising, and marketing its festival and the near impossible levels of inconvenience and/or impossibility that would accompany any attempt to rebrand its festival at this late date, the precedent of allowing Plaintiff to claim ownership of the generic phrase "Asian Lantern Festival" would severely prejudice the Pittsburgh Zoo along with all other current and future customers of Tianyu for the reasons articulated above, as it would effectively create a field of landmines in attempting to select a different name in future years that adequately conveys a description of the event to the consumer without drawing the ire of a particularly litigious prior event producer such as Plaintiff with a similar-sounding, generic, unregistered name for their own, unrelated festival.

25

Because the prejudice to the Pittsburgh Zoo, non-party Tianyu, and other customers of Tianyu far outweigh any prejudice to Plaintiff, this factor weighs in favor of the Pittsburgh Zoo.

### 4.  Public Interest

The public has a strong and evident interest in the outcome of this Motion, and this case. Plaintiff is attempting to arrogate to itself the generic description of an annual cultural festival celebrated around the world.  If it succeeds, a bevy of similar suits will follow, and domestic traditions like Thanksgiving Day parades and Easter egg hunts will suddenly become ripe for litigation over ownership of these traditional celebrations.  Permitting a phrase like "Asian Lantern Festival" to be protectable as a trademark could also have a chilling effect on the willingness of other organizations to sponsor similar festivals, for fear that any other generic description of the traditional festival will be met by a similar suit from another entity that has used a similar generic title in the past.  On balance, the public interest weighs heavily in favor of the Pittsburgh Zoo.

### E.  In the Alternative the Court Should Impose a Substantial Bond.

The Pittsburgh Zoo has invested substantial funds in developing its upcoming event, including but not limited to, contracting with an event provider, and developing and placing the advertising, tickets, posters, and other promotional materials. The Pittsburgh Zoo would suffer significant financial harm if it stopped use of the generic term "Asian Lantern Festival," including but not limited to, the costs associated with pulling and changing its advertising and reprinting all promotional materials.  As such, the Pittsburgh Zoo respectfully requests in the alternative that if any preliminary injunctive relief is granted in this matter, Plaintiff be required to post a bond sufficient to reimburse the Pittsburgh Zoo for the considerable inconvenience, burden, expense, and potential lost sales incurred as a result of such injunctive relief.

## VIII.  <u>CONCLUSION</u>

For the above-stated reasons, Defendant, the Pittsburgh Zoo & PPG Aquarium, respectfully ask that the Court deny Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction.

Respectfully submitted,

/s/ Christopher R. Opalinski
Christopher R. Opalinski, Esquire
Ohio Bar No. 0084504
PA I.D. No. 35267
copalinski@eckertseamans.com

Ray F. Middleman, Esquire
PA I.D. No. 81104 (PHV Application Forthcoming)
rmiddleman@eckertseamans.com

Candace Lynn Bell, Esquire
N.Y. I.D. No. 2418960 (PHV Application Forthcoming)
cbell@eckertseamans.com

Shane D. Valenzi, Esquire
PA I.D. No. 322025 (PHV Application Pending)
svalenzi@eckertseamans.com

Eckert Seamans Cherin & Mellott, LLC
PA Firm No. 075
44th Floor, 600 Grant Street
Pittsburgh, PA  15219
(412) 566-6000
Fax: (412) 566-6099

Attorneys for Defendant
Zoological Society of Pittsburgh a/k/a Pittsburgh
Zoo & PPG Aquarium

Date:  July 6, 2021

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 6, 2021, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system.

/s/ Shane D. Valenzi
Shane D. Valenzi, Esquire