UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

:
BOARD OF PARK COMMISSIONERS : CASE NO. 1:21-cv-01284
OF THE CLEVELAND :
METROPOLITAN PARK DISTRICT, : ORDER
: [Partially Resolving Doc. 7]
Plaintiff, :
:
vs. :
:
ZOOLOGICAL SOCIETY OF :
PITTSBURGH, :
:
Defendant. :

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Board of Park Commissioners of the Cleveland Metropolitan Park District ("Cleveland Metroparks") asks for a Rule 65 temporary restraining order and preliminary injunction.[1] With this request, Plaintiff Cleveland Metroparks seeks to stop Defendant Zoological Society of Pittsburgh ("Pittsburgh Zoo") from using the mark "Asian Lantern Festival."[2] Defendant opposes.[3]

This Court held a hearing on Plaintiff's temporary restraining order and preliminary injunction motion on July 15, 2021. At the hearing, this Court denied Plaintiff's motion for a temporary restraining order but declined to rule on Plaintiff's preliminary injunction motion until after the parties could conduct expedited discovery.[4]

---

[1] Fed. R. Civ. Pro. 65.
[2] Doc. 7.
[3] Doc. 15.
[4] Unedited Draft Hearing Transcript, at line 913, *Bd. of Park Comm'rs of the Cleveland Metro. Park Dist. v. Zoological Soc'y of Pittsburgh*, No. 1:21-cv-01284 (N.D. Ohio filed July 2, 2021).

Case No. 1:21-cv-01284
Gwin, J.

For the following reasons, the Court DENIES Plaintiff's request for a temporary restraining order.

## I. Background

Since 2018, Cleveland Metroparks has hosted an annual event at the Cleveland Zoo known as the Asian Lantern Festival.[5] The Cleveland Zoo produces the event through an agreement with Tianyu Arts & Culture, Inc., a company that presents "light show[s] using light displays of various sizes" throughout the United States.[6] Although Tianyu Arts & Culture, Inc. contracted and provided light shows in Louisville, Kentucky, Des Moines, Iowa, and other locations, the Cleveland Asian Lantern Festival was the only Northeast Ohio area light show until this year.[7]

In 2021, Defendant Pittsburgh Zoo hired the same Tianyu Arts & Culture, Inc., to produce a light show at the Pittsburgh Zoo.[8] At the end of June, Plaintiff Cleveland Metroparks learned that Defendant Pittsburgh Zoo's light show was using the name "Asian Lantern Festival" for its event. Cleveland Metroparks unsuccessfully tried to convince Defendant Pittsburgh Zoo to stop using the name.[9] This Lanham Act lawsuit and temporary restraining order request followed.

## II. Temporary Restraining Order

### a. Legal Standard

A court may issue a temporary restraining order without a hearing or notice to the

---

[5] Doc. 7 at 7.
[6] *Id.* at 8.
[7] Doc. 15 at 6.
[8] Doc. 7 at 9–10.
[9] *Id.* at 10.

-2-

Case No. 1:21-cv-01284
Gwin, J.

adverse party if the moving party faces "immediate and irreparable injury, loss, or damage."[10]

When determining whether to issue a temporary restraining order, a Sixth Circuit court considers:

> (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction [or temporary restraining order] would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.[11]

No factor is dispositive, but a likelihood of success on the merits is critical. "[A] finding that there is simply no likelihood of success on the merits is usually fatal."[12] Further, the likelihood of irreparable harm to the movant is also a key concern because a temporary restraining order's purpose is to maintain the status quo until a court can address an action's merits.[13]

A temporary restraining order is an extraordinary remedy. The movant must establish their case by "clear and convincing evidence."[14]

### b. Analysis

#### i. Likelihood of Success

At this point, Plaintiff Cleveland Metroparks does not show that they have a strong likelihood of success on the merits of their claim.

---

[10] Fed. R. Civ. Pro. 65(b)(1).

[11] *Summit Cty. Democratic Cent. and Exec. Comm. v. Blackwell*, 388 F.3d 547, 550 (6th Cir. 2004) (quoting *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir.2000)).

[12] *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).

[13] *See Reid v. Hood*, 1:10 CV2842, 2011 WL 251437, at *2 (N.D Ohio Jan. 26, 2011) (citing *Motor Vehicle Bd. of California v. Orrin W. Fox, et al.*, 434 U.S. 1345, 1347 n. 2 (1977) and *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).

[14] *Hartman v. Acton*,—F. Supp. 3d—, No. 2:20-cv-1952, 2020 WL 1932896, at *2 (S.D. Ohio Apr. 21, 2020) (citing *Honeywell, Inc. v. Brewer–Garrett Co.*, 145 F.3d 1331 (6th Cir.1998)); *see also Overstreet v. Lexington–Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Marshall v. Ohio Univ.*, No. 2:15-CV-775, 2015 WL 1179955, at *4 (S.D. Ohio Mar. 13, 2015).

Case No. 1:21-cv-01284
Gwin, J.

To begin, Defendant Pittsburgh Zoo makes a plausible argument that this Court does not have personal jurisdiction over Defendant and that venue is improper.[15] Personal jurisdiction acts as a necessary prerequisite for injunctive relief.[16] It is not clear that Defendant has sufficient connections to Ohio to give this Court jurisdiction.[17] The Court will not rule on this jurisdictional concern now, but this jurisdiction question weighs against Plaintiff's likelihood of success.

At this point, Plaintiff does not show clear evidence that they are likely to succeed on the merits of their underlying Lanham Act trademark claim. To succeed, Plaintiff must demonstrate that the "Asian Lantern Festival" mark is "protectable" and that there is a likelihood of customer confusion regarding whether Pittsburgh customers purchased their tickets because of a customer belief that the Cleveland Zoo was operating the Pittsburgh event.[18]

Defendant argues that the term "Asian Lantern Festival" is not protectable because it is generic.[19] In response, Plaintiff contends that "Asian Lantern Festival" is a suggestive mark or at least a descriptive mark with a secondary meaning.[20]

Although the words themselves may not be distinctive,[21] Plaintiff argues that they

---

[15] Doc. 15 at 11–12.

[16] See Acton Freight Servs., LLC v. Throne, No. 07-12553, 2007 WL 1830783, at *1 (E.D. Mich. June 22, 2007) (citing Kroger Co. v. Malease Foods Corp., 437 F.3d 506, 510 (6th Cir. 2006)).

[17] See Alahverdian v. Nemelka, No. 3:15–cv–060, 2015 WL 770278, at *2 (S.D. Ohio Feb. 23, 2015) ("Inherent in showing a substantial likelihood of success on the merits is a showing that Plaintiff could defeat a lack of personal jurisdiction defense.").

[18] Tumblebus Inc. v. Cranmer, 399 F.3d 754, 761 (6th Cir. 2005) ("When evaluating a Lanham Act claim for infringement of an unregistered mark, courts must determine whether the mark is protectable, and if so, whether there is a likelihood of confusion as a result of the would-be infringer's use of the mark.").

[19] Doc. 15 at 16–17.

[20] Doc. 7 at 12–13 ("[I]t describes some characteristic of the event and requires the consumer to use imagination and perception to determine the nature of the entire event, which includes not only large-scale illuminations but also live performances, including foot juggling, contortion and martial arts, as well as an Asian craft market and cuisine.")

[21] The Sixth Circuit explained: "The protectability of the TUMBLEBUS mark depends on the level of the mark's

Case No. 1:21-cv-01284
Gwin, J.

have come to symbolize the Cleveland event beyond the literal meaning of the words "Asian Lantern Festival." Plaintiff asserts that "Asian Lantern Festival" has a secondary meaning associated with the Cleveland Zoo's event and carries the goodwill and reputation that Plaintiff Cleveland Metroparks has cultivated over three years of producing the event.[22] Plaintiff extensively advertised the Cleveland event, which drew more than 165,000 visitors from Northeast Ohio and Western Pennsylvania in 2020.[23]

The Court cannot say that "Asian Lantern Festival" is not generic and is protectable.[24] "Asian Lantern Festival" could describe a type of event, rather than the specific Cleveland event. Plaintiff has not provided sufficient evidence that "Asian Lantern Festival" is associated with the Cleveland event or has the level of distinctiveness they claim. Further, limited runs over three years is a relatively short amount of time for Plaintiff's event to have achieved a reputation amounting to a secondary meaning.[25]

Additionally, the Court does not believe that there is a significant likelihood of confusion between the Pittsburgh and Cleveland events. In determining the likelihood of

---

distinctiveness. Suggestive, arbitrary, and fanciful marks are inherently distinctive and are protectable so long as the putative owner has actually used the mark. . . . Merely descriptive marks are not 'inherently distinctive,' but can become protectable by developing a secondary meaning. Generic marks, on the other hand, receive no protection." *Tumblebus Inc.*, 399 F.3d at 761–62 (citations omitted).

[22] Doc. 7 at 11.

[23] *Id.* at 9. Plaintiff also argues that "Asian Lantern Festival" has a secondary meaning associated with the Cleveland event. *Id.* at 13 (citing *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 640 n.14 (6th Cir. 2002)). The Court is not convinced it has a secondary meaning. Plaintiff has not provided evidence beyond Plaintiff's extensive advertising over the past three years. *See also* Doc. 1 at 5–6; Doc. 17 at 7–8 (noting the media's use of "Asian Lantern Festival").

[24] "A generic term is one that is commonly used as the name of a kind of goods. Unlike a trademark, which identifies the source of a product, a generic term merely identifies the genus of which a particular product is a species. If a mark's primary significance is to describe a type of product rather than the producer, it is generic and is not a valid trademark." *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 404 (6th Cir.2002).

[25] "A non-inherently distinctive mark or dress can have acquired distinctiveness through attachment of secondary meaning, which occurs when, 'in the minds of the public, the primary significance of a [mark or dress] is to identify the source of the product rather than the product itself.'" *Abercrombie & Fitch Stores, Inc.*, 280 F.3d at 635 (citing *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982)).

Case No. 1:21-cv-01284
Gwin, J.

confusion "as a result of the would-be infringer's use of the mark," a court considers:

> 1. strength of the plaintiff's mark;
> 2. relatedness of the goods;
> 3. similarity of the marks;
> 4. evidence of actual confusion;
> 5. marketing channels used;
> 6. likely degree of purchaser care;
> 7. defendant's intent in selecting the mark; [and]
> 8. likelihood of expansion of the product lines. [26]

The Court is not certain that Plaintiff's mark is particularly strong. Confusion seems unlikely because the events are centered around Cleveland's and Pittsburgh's respective zoos, even if they are both "turnkey" productions from Tianyu Arts & Culture.[27] Plaintiff has not provided actual evidence that consumers would think the Cleveland Zoo sponsored the Pittsburgh Zoo's event or that they are exactly the same event in two different locations.[28] While the event names are very similar, even the parties' websites present different names: "Asian Lantern Festival at the Pittsburgh Zoo & PPG Aquarium"[29] and "Asian Lantern Festival Presented By Meijer."[30] Plaintiff's trademark application uses "Asian Lantern Festival Cleveland Metroparks Zoo."[31]

The likely degree of purchaser care is also a question here.[32] Presumably, a ticket purchaser would exercise some care and consider factors beyond whether the events appear

---

[26] *Tumblebus Inc.*, 399 F.3d at 761, 763.

[27] Doc. 15 at 24; Doc. 17 at 10.

[28] Given that the parties have not conducted any discovery, the Court does not heavily weigh this factor. *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 284 (6th Cir. 1997) ("Due to the difficulty of securing evidence of actual confusion, a lack of such evidence is rarely significant[.]").

[29] Pittsburgh Zoo & PPG Aquarium, *Asian Lantern Festival*, https://www.pittsburghzoo.org/asian-lantern-festival/ (last visited July 19, 2021).

[30] Cleveland Metroparks Zoo, *Asian Lantern Festival Presented By Meijer*, https://www.clevelandmetroparks.com/zoo/programs-events/2021/special-events/asian-lantern-festival-presented-by-meijer (last visited July 20, 2021).

[31] Doc. 15-4.

[32] *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 285 ("The degree of care with which consumers likely purchase the parties' goods or services may affect the likelihood of confusion.").

Case No. 1:21-cv-01284
Gwin, J.

to be the same or linked, such as their preference for or proximity to the Pittsburgh Zoo or Cleveland Zoo. There is no evidence that a potential customer would be persuaded to go to Pittsburgh over Cleveland based on confusion regarding whether the Cleveland Zoo was sponsoring or directing the Pittsburgh event.

Plaintiff does not make a strong showing that Defendant intended to copy "Asian Lantern Festival" to benefit from Plaintiff's goodwill and reputation. Plaintiff argues that Defendant's intent to copy Plaintiff can be inferred from the fact that Defendant's employees attended the 2020 Cleveland event and knew Plaintiff Cleveland Metroparks used the "Asian Lantern Festival" mark.[33] Plaintiff's argument does not persuade because it is not clear that "Asian Lantern Festival" is a protectable mark. Moreover, Defendant provides evidence that other Tianyu-produced festivals, although outside the Northeast Ohio/Western Pennsylvania geographic area, used the term "Asian Lantern Festival" or a close variation on the term.[34] It is not clear that Defendant meant to specifically copy Plaintiff Cleveland Zoo's phrase.

Finally, from the parties' discussion at the July 15 hearing, there appears to be only a small amount of overlap between the parties' advertising markets and channels.

Plaintiff Cleveland Metroparks makes an insufficient showing that it is likely to succeed on its trademark infringement claim. Plaintiff has not sufficiently shown that "Asian Lantern Festival" is a protectable mark or that there is a likelihood of confusion between the Cleveland and Pittsburgh events.

### c. Risk of Irreparable Injury

Plaintiff has not adequately demonstrated a risk of irreparable injury if Defendant

---

[33] Doc. 7 at 17.
[34] Doc. 15 at 15–16; Doc. 15-2.

Case No. 1:21-cv-01284
Gwin, J.

Pittsburgh Zoo is permitted to continue to use the term "Asian Lantern Festival" during the pendency of this case.

Plaintiff hints at speculative harms that are insufficient to support irreparable harm finding.[35] For example, Plaintiff highlights Youngstown as a potential overlapping customer base equidistant to both the Cleveland and Pittsburgh Zoos.[36] But Plaintiff has not sufficiently shown an actual significant overlap in potential customers.

Courts often find irreparable injury where there is a "likelihood of confusion or possible risk to reputation."[37] Loss of reputational control can cause irreparable harm.[38] But that is not the case here, where the Court has not found likely confusion.

### d. Temporary Restraining Order's Potential Harm to Others

A temporary restraining order now, where the Court is unconvinced that Plaintiff has a strong likelihood of success, could harm Defendant's ability to successfully market and produce the 2021 Pittsburgh event. Defendant argues that it would be a serious impediment to their event if they were forced to stop all marketing activities, re-brand the event, and then re-purchase and plan new marketing campaigns before the Pittsburgh Zoo event is set to begin on August 14, 2021.[39]

Defendant also contends that a temporary restraining order in this action could harm Tianyu Arts & Culture, Inc. In theory, others interested in hosting an event facilitated through

---

[35] *See Hartman v. Acton*, —F. Supp. 3d—, No. 2:20-CV-1952, 2020 WL 1932896, at *4 (S.D. Ohio Apr. 21, 2020).
[36] Doc. 7 at 9, 20.
[37] *Spangler Candy Co. v. Tootsie Roll Indus., LLC*, 372 F. Supp. 3d 588, 607–08 (N.D. Ohio 2019) (quotation omitted).
[38] *Racing Prods., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 596 (6th Cir. 2015).
[39] Doc. 15 at 25–26; Pittsburgh Zoo & PPG Aquarium, *Asian Lantern Festival*, https://www.pittsburghzoo.org/asian-lantern-festival/ (last visited July 19, 2021).

Case No. 1:21-cv-01284
Gwin, J.

Tianyu could be wary of naming and branding complications.[40]

Plaintiff counters that "any such harm [to Defendant] is self-inflicted and should not excuse Pittsburgh Zoo's infringement." Plaintiff asserts that no third parties would be harmed by a temporary restraining order.[41]

Given that the Court does not find Plaintiff has a strong likelihood of success on the merits and that the Pittsburgh Zoo's event is set to begin in approximately three weeks, this factor favors Defendant Pittsburgh Zoo.

### e. Public Interest

Lastly, the Court finds that the public interest is best served by permitting both events to continue, even if they compete with each other. It is unlikely that there will be confusion between the two events. The public interest would not be served by restricting competition in this field.

### III. Conclusion

For the foregoing reasons, the Court DENIES Plaintiff's request for a temporary restraining order.

IT IS SO ORDERED.

Dated: July 22, 2021             *s/       James S. Gwin*
                                  JAMES S. GWIN
                                  UNITED STATES DISTRICT JUDGE

---

[40] Doc. 15 at 25–26.
[41] Doc. 7 at 14–15.

-9-